[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones*, Slip Opinion No. 2020-Ohio-6729.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6729

THE STATE OF OHIO, APPELLANT, *v*. JONES ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones*, Slip Opinion No. 2020-Ohio-6729.]

*Criminal law—Felony sentencing—Standard of review upon appeal of sentence—R.C. 2953.08(G)(2)(a) does not provide a basis for an appellate court to modify or vacate a sentence based on the lack of record support for the trial court's findings made under R.C. 2929.11 and 2929.12—R.C. 2953.08(G)(2)(b) does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12.*

(No. 2018-0444—Submitted August 4, 2020—Decided December 18, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County,

Nos. 103290 and 103302, 2018-Ohio-498.

_____

**O'CONNOR, C.J.**

{¶ 1} Appellees, Randy and Carissa Jones, were convicted of involuntary manslaughter for the tragic death of their adopted daughter, T.J., and they each were sentenced to ten years in prison. This appeal concerns whether the Eighth District Court of Appeals properly vacated their sentences. We hold that it did not. We therefore reverse the judgments of the court of appeals and reinstate the sentences imposed by the trial court.

## I. RELEVANT BACKGROUND

### A. Convictions

{¶ 2} Randy and Carissa Jones adopted T.J. in 2002, when she was nine months old. In 2006, they had T.J. evaluated by a psychologist and a psychiatrist, who diagnosed her with autism, attention-deficit/hyperactivity disorder, and an intellectual disability. The psychologist also told the Joneses that T.J. would likely not progress beyond the sixth-grade level in school. The Joneses found that T.J. had difficulty communicating; she had a limited ability to understand what was said to her and an even more limited ability to verbalize a response. They began home-schooling T.J. when she was in the second grade.

{¶ 3} On February 18, 2013, Carissa found that T.J. was not breathing and called 9-1-1. First responders attempted to resuscitate T.J. while taking her to the hospital.

{¶ 4} At the hospital, Dr. Jamil Alarafi immediately noticed that T.J. smelled like "necrotic and decaying flesh, * * * like gangrene." She also had wounds on her chest and neck, and she was visibly malnourished, with a "distended" belly. Dr. Alarafi also observed severe wounds on T.J.'s lower extremities, including dying tissue on her feet and abscesses on her ankle and legs. Ultimately, all efforts to save T.J.'s life were unsuccessful, and she was pronounced dead at the hospital. She was 12 years old.

{¶ 5} Dr. Andrea McCollum of the Cuyahoga County Medical Examiner's Office conducted an autopsy. She concluded that T.J. died from sepsis and

pneumonia caused by bacteria in the abscess on T.J.'s ankle entering T.J.'s bloodstream and traveling to her lungs. Dr. McCollum also determined that the manner of death was homicide due to the Joneses' lack of care for T.J.

{¶ 6} The Cuyahoga County Department of Children and Family Services then conducted an investigation into T.J.'s death. The Joneses told an investigator that T.J. had been sick for a little over a week, but they said they had often been forced to guess what was wrong with her when she was sick because she never complained about anything and she seemed to have a very high tolerance for pain. When the investigator questioned the Joneses about the injuries to T.J.'s body, they stated that the injuries had been caused by her own self-injurious behavior and that although they had made efforts to stop that behavior, such injuries were not unusual.

{¶ 7} After the investigation, Randy and Carissa Jones were each charged with involuntary manslaughter under R.C. 2903.04(A), three counts of endangering children under R.C. 2919.22, and permitting child abuse under R.C. 2903.15(A). At the conclusion of a joint jury trial, they were each found guilty of involuntary manslaughter, two counts of endangering children, and permitting child abuse. They were each acquitted of one count of endangering children.

*B. Sentencing*

{¶ 8} The trial court merged all counts and the state elected to proceed to sentencing on the involuntary-manslaughter count for both defendants under former R.C. 2929.14(A)(1), 2012 Am.Sub.S.B. No. 337, which required the trial court to impose definite sentences between 3 and 11 years in prison.

{¶ 9} The court sentenced both Randy and Carissa Jones to ten years in prison, followed by five years of postrelease control. In doing so, the trial judge stated that she had taken "copious notes" during the long trial and that she had reviewed those notes in preparation for the sentencing. She also said, "I've perhaps given this case more thought than just about any case that I've ever had in my career." Finally, the trial judge specifically stated that she had considered all the

required factors under R.C. 2929.11, 2929.12, and 2929.13, and the sentencing entry indicates the same.

{¶ 10} The trial judge also made statements concerning the evidence introduced at trial and her view of the Joneses' conduct. She stated that the photographs of T.J.'s injuries were among the worst photographs of a child's injuries she had ever seen. She also stated that she doubted that the injuries on T.J.'s body were self-inflicted and that she did not believe Randy Jones's claim that he had not been aware of how severe those injuries were. A large number of people sought to support the Joneses at the sentencing hearing, but the trial judge noted that they had not seen the evidence presented at trial, including the photographs of T.J.'s injuries, and that their support could not undo the Joneses' failure to provide care for T.J. The trial judge also noted that she had not observed the Joneses shed a single tear.

*C. The Joneses' Appeals*

{¶ 11} The Joneses separately appealed, but their appeals were consolidated. The Eighth District Court of Appeals issued three separate decisions in their cases. The first two are not relevant to this appeal. In *State v. Jones*, 2016-Ohio-5923, 76 N.E.3d 417 ("*Jones I*"), the court affirmed the Joneses' convictions but vacated their sentences and remanded for resentencing, *see id.* at ¶ 113-114. In *State v. Jones*, 2016-Ohio-7702, 76 N.E.3d 596 ("*Jones II*"), the court upon reconsideration vacated the decision in *Jones I* and again affirmed the convictions and—after applying a different analysis regarding the propriety of their sentences— again vacated their sentences and remanded for resentencing, *see id.* at ¶ 117-118. The Eighth District then granted the state's motion for en banc consideration and heard the Joneses' appeals en banc due to a conflict between its decision in *Jones II* and one of its prior decisions that also involved the standards for appellate review of felony sentences. *State v. Jones*, 2018-Ohio-498, 105 N.E.3d 702, ¶ 1 ("*Jones III*"). Ultimately, in the decision now on appeal to this court, it vacated the Joneses'

sentences a third time and remanded for resentencing, in the process vacating the decision in *Jones II* and again affirming the convictions, *see Jones III* at ¶ 3, 150, 153.

{¶ 12} The Eighth District's en banc decision in *Jones III* focused on R.C. 2953.08. In relevant part, R.C. 2953.08(A)(4) permits a criminal defendant to appeal his or her sentence on the ground that it is "contrary to law." R.C. 2953.08(G)(2) then provides:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 13} In *Jones III*, a majority of the judges of the Eighth District joined the holding stated in the lead opinion that our decision in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, interpreted R.C. 2953.08(G)(2)(a) to

permit an appellate court to modify or vacate a sentence if it finds that the record does not support the sentencing court's findings under R.C. 2929.11 and 2929.12. *Jones III*, 2018-Ohio-498, 105 N.E.3d 702, at ¶ 5-6, 21 (lead opinion); *id.* at ¶ 22 (Stewart, J., concurring in judgment only). *Marcum* concerned the question whether appellate courts may review felony sentences under an abuse-of-discretion standard, rather than the clear-and-convincing-evidence standard. *Marcum* at ¶ 14-19. We concluded that R.C. 2953.08 "specifically and comprehensively defines the parameters and standards—including the standard of review—for felony-sentencing appeals," *id.* at ¶ 21, and that R.C. 2953.08(G)(2) expressly requires an appellate court to use the clear-and-convincing-evidence standard, *id.* at ¶ 22. In doing so, however, we made additional statements relating to R.C. 2929.11 and 2929.12. We noted that "some sentences do not require the findings that R.C. 2953.08(G) specifically addresses." *Id.* at ¶ 23. We then stated:

> Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*Id.* Based on these statements, the lead opinion in *Jones III* stated that an appellate court may review "the considerations under R.C. 2929.11 and the findings under R.C. 2929.12" and if, "after reviewing those findings, [the appellate court] find[s] that the sentence is contrary to law or not supported by the record, [it] may take action." *Id.* at ¶ 19.

{¶ 14} Five judges dissented. In their view, the trial court considered everything it was obligated to consider and the record supported the Joneses' sentences. *Id.* at ¶ 48, 53 (Sean C. Gallagher, J., dissenting). They would therefore have affirmed the Joneses' sentences. *Id.* at ¶ 53.

{¶ 15} *Jones III* also included a new opinion by the three-judge panel that had heard *Jones I* and *Jones II*. In that opinion, the panel applied the reasoning of the en banc court's lead opinion to the Joneses' cases and concluded that the record did not support their sentences because those sentences did not advance the overriding purposes of felony sentencing, as stated in former R.C. 2929.11(A), 2011 Am.Sub.H.B. No. 86. *Id.* at ¶ 151-152. In full, the panel's decision on this point stated as follows:

> A tragedy occurred in this case: T.J. died. On this record, however, we find that imprisoning her parents for ten years does not advance the two primary purposes of felony sentencing, that is, to protect the public from the Joneses and to punish them using minimum sanctions. The record demonstrates that the Joneses exercised poor judgment in the care of T.J. But they cared for her nonetheless and did what they believed was best for her. The public does not need to be protected from them—the likelihood of this happening again is almost nonexistent. And as for punishment— what greater punishment can there be than the death of their child.

*Id.* at ¶ 152. The panel therefore vacated the Joneses' sentences and remanded the cases for resentencing. *Id.* at ¶ 153.

{¶ 16} The state sought this court's discretionary review of one proposition of law: "R.C. 2953.08(G)(2) does not allow a court of appeals to review the trial

court's findings made pursuant to R.C. 2929.11 and R.C. 2929.12." We accepted jurisdiction. 153 Ohio St.3d 1474, 2018-Ohio-3637, 106 N.E.3d 1260.

## II. ANALYSIS

{¶ 17} "The interpretation of a statute is a question of law, and accordingly, we review the matter de novo." *State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 6.

### A. R.C. 2929.11 and 2929.12

{¶ 18} Before considering the parties' arguments, it is important to understand exactly what R.C. 2929.11 and 2929.12 provide. R.C. 2929.11[1] addresses the purposes of felony sentencing. It provides as follows:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate

---

1. The current version of R.C. 2929.11 quoted here is different from the former version applied by the court of appeals. The differences are not material for purposes of this opinion.

with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

(C) A court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender.

{¶ 19} R.C. 2929.12 addresses factors to be taken into account when imposing a sentence under R.C. 2929.11. R.C. 2929.12(A) provides:

Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in [divisions (B) through (F)] of this section * * * and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

R.C. 2929.12(B) through (F) then set out factors for the court to consider relating to matters such as the seriousness of the offender's conduct, the likelihood of the offender's recidivism, and the offender's service in the armed forces of the United States, if any.

{¶ 20} We have previously held that neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31; *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

*B. The Parties' Arguments*

{¶ 21} The state argues that an appellate court is not permitted to modify or vacate a sentence based on its own finding that the record does not support the sentencing court's findings under R.C. 2929.11 and 2929.12. Specifically, it notes that R.C. 2929.11 and 2929.12 do not require the trial court to make any findings. It also maintains that even when a trial court does make findings under R.C. 2929.11 and 2929.12, R.C. 2953.08(G)(2)(a) permits a sentence to be modified or vacated due to lack of support in the record only with respect to findings made pursuant to several specifically identified statutes—and R.C. 2929.11 and 2929.12 are not among them. Ultimately, the state argues that the Joneses' sentences were not contrary to law because the trial court considered all the factors it was required to consider, properly imposed postrelease control, and imposed sentences within the applicable range.

{¶ 22} Amicus curiae, the Ohio Attorney General, argues in support of the state that R.C. 2953.08 does not permit an appellate court to review a trial court's discretionary determination that a particular sentence is warranted under R.C. 2929.11 and 2929.12. The attorney general submits that an appellate court's disagreement with such a determination is not a disagreement over whether the sentence is "contrary to law" under R.C. 2953.08(G)(2)(b). The attorney general argues that the nature of an amendment to R.C. 2953.08 compels this conclusion.

{¶ 23} The Joneses each respond that a sentence is "contrary to law" under R.C. 2953.08(G)(2)(b) when an appellate court finds that the record does not support a sentence with respect to R.C. 2929.11 and 2929.12. They rely on this court's statements concerning R.C. 2929.11 and 2929.12 in *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23. Furthermore, according to the Joneses, requiring that the record reflect only that the trial court *considered* those statutes would not permit meaningful appellate review.

*C. The Eighth District Erred*

{¶ 24} At the outset, we find it necessary to distinguish the holding of the en banc court in *Jones III* from the other significant conclusion reached in the lead opinion. In the en banc decision, 7 of the 12 judges of the Eighth District held that our decision in *Marcum* interpreted R.C. 2953.08(G)(2)(a) to permit an appellate court to modify or vacate a sentence if it finds that the record does not support the sentencing court's findings under R.C. 2929.11 and 2929.12. *Jones III*, 2018-Ohio-498, 105 N.E.3d 702, at ¶ 5-6, 21 (lead opinion); *id.* at 22 (Stewart, J., concurring in judgment only). In the lead opinion, however, six of those seven judges also reached a broader conclusion, determining that the statute permits an appellate court to review whether the record supports the overall *sentence*, rather than simply, as the en banc decision held for the court, to review whether the record supports findings made by the trial court under R.C. 2929.11 and 2929.12. *Jones III* at ¶ 19.

{¶ 25} This distinction matters because, as explained below, the panel's decision in *Jones III* appears to have relied on reasoning stated in the lead opinion to review whether the record supports the Joneses' sentences, not just the specific findings by the trial court under R.C. 2929.11 and 2929.12. Ultimately, however, we hold that the Eighth District erred.

**1. The en banc court's holding that R.C. 2953.08(G)(2)(a) permits an appellate court to review whether the record supports findings under R.C. 2929.11 and 2929.12**

{¶ 26} The holding of the en banc court was that our decision in *Marcum* had interpreted R.C. 2953.08(G)(2)(a) to permit an appellate court to modify or vacate a sentence based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12. *Jones III* at ¶ 5-6, 21 (lead opinion); *id.* at 22 (Stewart, J., concurring in judgment only). We disagree.

{¶ 27} As discussed above, we held in *Marcum* that R.C. 2953.08(G) defines the standard of review for felony-sentencing appeals. *Marcum*, 146 Ohio

St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 21.  The statements in *Marcum* at ¶ 23 suggesting that it would be "fully consistent" with R.C. 2953.08(G) for an appellate court to modify or vacate a sentence when the record does not support the sentence under R.C. 2929.11 or 2929.12 were made only in passing and were not essential to this court's legal holding.  The statements are therefore dicta.

{¶ 28} Beyond that, nothing in the text of R.C. 2953.08(G)(2)(a) otherwise supports the holding of the en banc court.  R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that "the record does not support the sentencing court's findings under" certain specified statutory provisions.  But R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a).  Only R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified.

{¶ 29} The Eighth District therefore erred by relying on dicta in *Marcum* and by concluding that R.C. 2953.08(G)(2)(a) provides a basis for an appellate court to modify or vacate a sentence based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12.

## 2. The lead opinion's conclusion that an appellate court may review whether the record supports a sentence under R.C. 2929.11 and 2929.12

{¶ 30} The lead opinion concluded that an appellate court may review "the considerations under R.C. 2929.11 and the findings under R.C. 2929.12" and if, "after reviewing those findings, [the appellate court] find[s] that the sentence is contrary to law or not supported by the record, [it] may take action." *Jones III*, 2018-Ohio-498, 105 N.E.3d 702, at ¶ 19.  That is broader than the en banc court's holding because it suggests that an appellate court may review whether the record supports the *sentence as a whole* under R.C 2929.11 and 2929.12.  This effectively allows the appellate court to substitute its judgment for that of the trial court concerning the overall selection of a sentence that is compliant with R.C. 2929.11

and 2929.12. In our view, nothing in R.C. 2953.08(G)(2) permits such an action by an appellate court.

{¶ 31} As an initial matter, the lead opinion's conclusion in this regard makes a distinction between a sentence that is "contrary to law" and one that is "not supported by the record." In so doing, it appears to track the types of review permitted in R.C. 2953.08(G)(2)(a) and (b), which concern the same topics. But R.C. 2953.08(G)(2)(a) clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and 2929.12 because, as explained above, R.C. 2929.11 and 2929.12 are not among the statutes listed in the provision.

{¶ 32} We also reject any suggestion that R.C. 2953.08(G)(2)(b) provides a basis for the lead opinion's conclusion. R.C. 2953.08(G)(2)(b) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that the sentence is "otherwise contrary to law." But an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is "otherwise contrary to law" as that term is used in R.C. 2953.08(G)(2)(b).

{¶ 33} The General Assembly did not define the term "contrary to law." In such a situation, we generally look to a term's ordinary meaning at the time the statute was enacted. *See New Prime Inc. v. Oliveira*, ___ U.S. ___, 139 S.Ct. 532, 539, 202 L.Ed.2d 536 (2019); *see also id.* at ___, 139 S.Ct. at 544 (Ginsburg, J, concurring) (agreeing that words in a statute should generally be interpreted as taking their ordinary meaning at the time the statute was enacted but noting that a legislative body "may design legislation to govern changing times and circumstances" and citing decisions illustrating that principle).

{¶ 34} The term "contrary to law" was used in R.C. 2953.08(G)(4) when R.C. 2953.08 was enacted in 1995. Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, 7565. At that time, legal dictionaries defined "contrary to law" as "in

violation of statute or legal regulations at a given time," *e.g., Black's Law Dictionary* 328 (6th Ed.1990). We must also "consider the statutory language in context, construing words and phrases in accordance with rules of grammar and common usage." *State Farm Mut. Auto. Ins. Co. v. Grace*, 123 Ohio St.3d 471, 2009-Ohio-5934, 918 N.E.2d 135, ¶ 25. Furthermore, the evolution of a statute through amendments can inform our understanding of the meaning of the text. *See Lynch v. Gallia Cty. Bd. of Commrs.*, 79 Ohio St.3d 251, 254, 680 N.E.2d 1222 (1997) ("When confronted with amendments to a statute, an interpreting court must presume that the amendments were made to change the effect and operation of the law"); *Miracle v. Ohio Dept. of Veterans Servs.*, 157 Ohio St.3d 413, 2019-Ohio-3308, 137 N.E.3d 1110, ¶ 21-23 (considering the evolution of a statute to discern the General Assembly's intent). When we consider the evolution of R.C. 2953.08(G), it is evident that an appellate court's conclusion that the record does not support a sentence under R.C. 2929.11 or 2929.12 is not the equivalent of a conclusion that the sentence is "otherwise contrary to law" as that term is used in R.C. 2953.08(G)(2)(b).

{¶ 35} The General Assembly enacted former R.C. 2953.08 as part of a substantial overhaul of the state's sentencing laws in 1995. The provision took effect on July 1, 1996. Am.Sub.S.B. No. 2, Section 6, 146 Ohio Laws, Part IV, at 7810. As originally enacted, R.C. 2953.08(G) authorized appellate courts to "increase, reduce, or otherwise modify a sentence that is appealed under this section or * * * vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly [found] any of" the following:

(1) *That the record does not support the sentence*;

(2) That the sentence included a prison term [for certain felonies and, if the sentencing court did not make certain findings under R.C. 2929.13(B), that the procedures in that provision] were

not followed or that * * * there is an insufficient basis for imposing a prison term for the offense;

(3) That the sentence did not include a prison term [for certain felonies and that either the procedures in R.C. 2929.13(D)] were not followed or that * * * there is an insufficient basis for overriding the presumption [against a prison term] and imposing a sanction other than a prison term for the offense;

(4) *That the sentence is otherwise contrary to law*.

(Emphasis added.)  *Id.*, Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, at 7564-7565.

{¶ 36} In 2000, however, the General Assembly materially amended this provision, condensing it to the two scenarios found in R.C. 2953.08(G)(2) today. Specifically, it was amended to provide that an appellate court may modify or vacate a sentence if it clearly and convincingly finds either:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant; [or]

(b) That the sentence is otherwise contrary to law.

Former R.C. 2953.08(G)(2), Sub.H.B. No. 331, 148 Ohio Laws, Part I, 3414, 3419.

{¶ 37} This amendment eliminated the broad stand-alone provision from the first paragraph of the original version of R.C. 2953.08(G), which allowed an appellate court to modify or vacate the sentence when it found that "the record does not support the sentence," former R.C. 2953.08(G)(1), 146 Ohio Laws, Part IV, at 7564.  In its place, the General Assembly enacted a narrower provision in which an appellate court's authority to modify or vacate a sentence is limited to situations in

which it concludes that the record does not support the sentencing court's findings under certain specified statutes, not including R.C. 2929.11 and 2929.12. Additionally, the "otherwise contrary to law" provision was not amended; it was simply retained as R.C. 2929.08(G)(2)(b). And although R.C. 2953.08(G) has been amended several times since 2000, none of those amendments materially changed R.C. 2953.08(G)(2) for the purposes of this case.

{¶ 38} In our view, this evolution reveals two things of importance to this case. First, when R.C. 2953.08 was enacted in 1995, the term "otherwise contrary to law" in former R.C. 2953.08(G)(4), 146 Ohio Laws, Part IV, at 7565, meant something other than an appellate court finding that the record does not support a sentence. This is because such a finding would have fallen under the provision permitting the appellate court to vacate a sentence if "the record does not support the sentence." Former R.C. 2953.08(G)(1), 146 Ohio Laws, Part IV, at 7564. Second, since R.C. 2953.08 was first enacted, the term "otherwise contrary to law" has not been expanded or modified to include such findings. This is because when the General Assembly amended R.C. 2953.08(G) in 2000 to eliminate the broad provision permitting an appellate court to review whether "the record does not support the sentence," it left the "otherwise contrary to law" provision that is still in current R.C. 2953.08(G)(2)(b) unchanged. Concluding that the term "otherwise contrary to law" nonetheless has expanded to include an appellate court's conclusion that a sentence is not supported by the record would run contrary to the notion that we "must presume that the amendments were made to change the effect and operation of the law," *Lynch*, 79 Ohio St.3d at 254, 680 N.E.2d 1222; *see also State v. Aguirre*, 144 Ohio St.3d 179, 2014-Ohio-4603, 41 N.E.3d 1178, ¶ 1 (stating that statutory amendments deleting language permitting awards of restitution to third parties showed that legislature intended to disallow such awards).

{¶ 39} R.C. 2953.08(G)(2)(b) therefore does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence

is not supported by the record under R.C. 2929.11 and 2929.12. Consequently, we hold that the lead opinion erred by permitting this type of review.

### 3. The holding of the merits panel

{¶ 40} We next turn to the question whether the judgments of the merits panel vacating the Joneses' sentences might nonetheless be justified under R.C. 2953.08(G)(2). We conclude that they are not.

{¶ 41} The merits panel's opinion appears to have substituted its own judgment for that of the trial court regarding the appropriate sentences for the Joneses under R.C. 2929.11 and 2929.12. Although the trial court engaged in a lengthy discussion at sentencing addressing numerous aspects of the evidence and clearly stating conclusions regarding its view of the Joneses' conduct, the panel vacated the Joneses' sentences in a single paragraph. *Jones III*, 2018-Ohio-498, 105 N.E.3d 702, at ¶ 152. And the brief explanation it provided reflects that it disagreed with the overall manner in which the trial court relied on R.C. 2929.11 and 2929.12 to select a sentence. The panel weighed the evidence and judged the credibility of statements made by the Joneses, formed an opinion on the appropriate overall view of the meaning of that evidence, and ultimately made an independent determination that sentences of ten years in prison would not serve the primary purposes of felony sentencing under R.C. 2929.11(A). *Id.* In other words, it effectively conducted a plenary review of the sentencing and based its decision on its own view of whether ten years in prison was appropriate under R.C. 2929.11 and 2929.12.

{¶ 42} Given this, the panel erred in the same way the lead opinion did. Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12. In particular, R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry like the independent sentence evaluation this court

must conduct under R.C. 2929.05(A) when reviewing a death penalty-sentence. *See State v. Hundley*, ___ Ohio St.3d ___, 2020-Ohio-3775, ___ N.E.3d ___, ¶ 128 (recognizing that R.C. 2929.05(A) requires de novo review of findings and other issues within its scope). We therefore conclude that the merits panel's ultimate judgments were erroneous.

### III. CONCLUSION

{¶ 43} For the foregoing reasons, we reverse the Eighth District's judgments and reinstate the sentences imposed by the trial court.

Judgments reversed.

FRENCH, DEWINE, and BEATTY BLUNT, JJ., concur.

KENNEDY, J., concurs, with an opinion.

FISCHER, J., concurs, with an opinion.

DONNELLY, J., dissents, with an opinion.

LAUREL BEATTY BLUNT, J., of the Tenth District Court of Appeals, sitting for STEWART, J.

_____

**KENNEDY, J., concurring.**

{¶ 44} Because the majority adopts the views expressed in my separate opinion in *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 44 (Kennedy, J., concurring in judgment only), that (1) our statement in ¶ 23 of *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, is dictum that is not binding in future cases and (2) "an appellate court is without authority to review a sentencing court's determinations under R.C. 2929.11 and 2929.12," I concur with the majority's decision today.

_____

**FISCHER, J., concurring.**

{¶ 45} I fully concur in the majority opinion. I write separately to additionally address the arguments raised by appellees, Randy and Carissa Jones,

that the legal principles stated by the Eighth District Court of Appeals in its decision in this case are necessary to ensure that a trial court's compliance with R.C. 2929.11 and 2929.12 is subject to meaningful appellate review and is not wholly unreviewable.

{¶ 46} I acknowledge the Joneses' concerns about meaningful appellate review. But for the reasons stated in the majority opinion, R.C. 2953.08(G)(2) simply does not permit a court of appeals to conduct the type of review that the Eighth District conducted regarding the Joneses' sentences under the rationales stated by the Eighth District. If any changes to R.C. 2929.11, 2929.12, or 2953.08(G)(2) in relation to this court's holding today are warranted, they are for the General Assembly to make.

{¶ 47} There is also no reason to believe that a trial court's consideration under R.C. 2929.11 and 2929.12 is wholly unreviewable. First, although, as the majority opinion explains, R.C. 2929.11 and 2929.12 do not require a trial court to make any specific findings on the record, those statutes are not optional. Both statutes use the term "shall" multiple times in relation to other matters. For example, R.C. 2929.11(A) and 2929.12(A) through (F) set forth matters that a sentencing court "shall consider," and R.C. 2929.11(A) requires that the trial court "shall be guided by" the three overriding purposes of felony sentencing. R.C. 2929.11(B) further requires that the sentence imposed by the trial court "shall" meet certain specific criteria. This court construes the word "shall" as " '*mandatory* unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage.' " (Emphasis and brackets added in *Morgan*.) *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 22, quoting *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 271 N.E.2d 834 (1971), paragraph one of the syllabus.

{¶ 48} Second, R.C. 2953.08(G)(2) expressly requires an appellate court to "review the record, including the findings underlying the sentence." The breadth

of this statutory provision necessarily means that if a trial court does make findings under R.C. 2929.11 and 2929.12, the appellate court may review those findings for certain limited purposes.

{¶ 49} Third, R.C. 2953.08(G)(2)(b) provides that an appellate court can modify or vacate a sentence on the ground that it is "otherwise contrary to law." This court's holding today specifies what an appellate court may *not* do under this provision: it may not conduct an independent review of whether the record supports the sentence and substitute its own judgment regarding the appropriate sentence. But R.C. 2929.11(C), which prohibits sentences based on an offender's "race, ethnic background, gender, or religion," indicates one way in which a sentence may be "otherwise contrary to law" under R.C. 2953.08(G)(2)(b). This court has also held that when a trial court sentences a juvenile offender to life in prison without parole, "the record must reflect that the sentencing court specifically considered the juvenile offender's youth as a mitigating factor." *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, ¶ 7. We are not presented with any specific arguments of this sort, however, and it is therefore not necessary for this court to express any opinion on the potential viability of any other arguments under R.C. 2953.08(G)(2)(b). Ultimately, it is sufficient for purposes of this case that this court holds that the judgments of the Eighth District were erroneous and that the statements in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, on which the Eighth District relied were dicta.

_____

**DONNELLY, J., dissenting.**

{¶ 50} Today's decision is a vote of no confidence in our appellate court judges. In essence, they are told that they are incapable of appropriately and selectively reviewing outlier criminal sentences to ensure a trial court's compliance with R.C. 2929.11 and 2929.12. If our decision in *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169 was exhibit A for eviscerating the statutory

right to appellate review of criminal sentences, then this case surely qualifies as exhibit B. Regrettably, this may provide the final nail in the coffin, the death knell for meaningful appellate review. I dissent.

{¶ 51} As I explained in my dissenting opinion in *Gwynne*, a meaningful and lawful criminal sentence is a sentence that is clearly and convincingly supported by the record, proportional to a defendant's conduct, and deliberately considered in accordance with all relevant law. *Id.* at ¶ 45 (Donnelly, J., dissenting). Because R.C. 2929.11 and 2929.12 are mandatory laws that govern criminal sentencing, a sentence that is imposed without the judge's having considered the statutes is contrary to law. A sentence issued by a judge who fails to consider them is no less contrary to law just because a judge recites, through "magic words," that they were considered. Nevertheless, the majority establishes by judicial decree that a sentence that is contrary to law cannot be reviewed by a court of appeals for being contrary to law. And it does so even though R.C. 2953.08(G)(2)(b) expressly authorizes Ohio's courts of appeals to increase, reduce or modify, or vacate and remand for resentencing, any sentence a court of appeals clearly and convincingly finds is "contrary to law."

{¶ 52} In this case, the Eighth District Court of Appeals reviewed a record in which, although the sentencing judge said that the purposes of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12 had been considered, the sentence imposed appeared to have been driven primarily by nonstatutory outrage. The judge was clearly enraged that appellees, Randy and Carissa Jones, did not accept personal responsibility for their failure to intervene or provide medical care for T.J. The trial judge was especially fixated on photographs of T.J.'s injuries, particularly state's exhibit No. 87, which depicted T.J.'s gangrenous left foot.

{¶ 53} Based on this record, the appellate court determined that the record did not support the ten-year sentences imposed—one year less than the maximum

sentence permitted under Ohio law—because they did not advance the two primary purposes of felony sentencing stated in former R.C. 2929.11(A), 2011 Am.Sub.H.B. No. 86, as applicable to this case, which were to protect the public from offenders and to punish offenders using minimum sanctions. The appellate court determined that the record demonstrated that the Joneses exercised poor judgment in the care of T.J. but that they cared for her nonetheless and did what they believed was best for her. The appellate court found that the public did not need to be protected from them, as the likelihood of this happening again is almost nonexistent. As for punishment, the appellate court concluded that there was no greater punishment than the death of their child. 2018-Ohio-498, 105 N.E.3d 702, ¶ 152. I cannot fault the court of appeals for its responsible exercise of appellate authority.

{¶ 54} To be sure, judges are human and the death of a child caused by the parents' neglect is hard for anyone to stomach, but sentences must still fit the crime and be governed by objective factors, as dictated by Ohio law. No judge should let emotion rule the day. Appellate courts serve as an independent and impartial layer of review to correct outcomes that lack legal justification.

{¶ 55} The Ohio General Assembly has wisely mandated that trial courts take into account the objective sentencing considerations prescribed by R.C. 2929.11 and 2929.12 when imposing criminal sentences so as to guide their decision-making and guard against emotionally wrought decisions. The General Assembly intended for appellate courts to be an essential check to ensure that R.C. 2929.11 and 2929.12 are observed, applied, and enforced. The General Assembly did not forbid Ohio's courts of appeals from exercising their appellate responsibilities. The Ohio Supreme Court has done that by today's decision.

{¶ 56} By determining that R.C. 2953.08(G)(2) does not allow a court of appeals to review the trial court's findings made pursuant to R.C. 2929.11 and 2929.12, the majority has chosen to hide these statutes behind a curtain that is off

limits to our appellate courts.  The guardrails are off.  I cannot join this grant of unconstrained discretion to trial courts.  I dissent.

—————————

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda and Kevin Filiatraut, Assistant Prosecuting Attorneys, for appellant.

James J. Hofelich, for appellee Randy Jones.

Mark A. Stanton, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, for appellee Carissa Jones.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor General, and Zachery P. Keller, Deputy Solicitor General, urging reversal for amicus curiae, Ohio Attorney General Dave Yost.

—————————