[Cite as *State v. Wilson*, 2021-Ohio-3768.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-21-1037

    Appellee                             Trial Court No. CR0202001413

v.

Nicole Wilson                                    **DECISION AND JUDGMENT**

    Appellant                            Decided:  October 22, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Brad F. Hubbell, for appellant.

* * * * *

**MAYLE, J.**

## I.  Introduction

{¶ 1} The defendant-appellant, Nicole Wilson, appeals the February 3, 2021

judgment of the Lucas County Court of Common Pleas, convicting her of two counts of

endangering children and sentencing her to serve an aggregate prison term of five years. For the following reasons, we affirm the trial court's judgment.

## II. Background

{¶ 2} On March 5, 2020, Nicole Wilson and her husband, Francis Wilson, were indicted on eighteen counts of child endangering. Counts 1 through 9, all third degree felonies, applied specifically to Nicole Wilson, hereinafter identified as the "appellant."

{¶ 3} The victims in this case, Z.W., aged 16, and F.W., aged 14, are appellant's step-daughter and step-son, respectively. Appellant and her husband also have two younger, biological children of their own, who are not the subject of this case.

{¶ 4} At a change of plea hearing, appellant entered a guilty plea pursuant to *North Carolina v. Alford* to two violations of R.C. 2929.22(B)(3), (E)(1) and (E)(3), as set forth in Counts 4 and 5, and the state agreed not to prosecute the remaining counts against her.

{¶ 5} Had the matter proceeded to trial, the state asserted that it would have shown that appellant forced Z.W. and F.W. to live in the basement of the family home, as a form of punishment, between July 16, 2018 and July 16, 2019. Although the children were allowed to attend school and occasionally to work odd jobs, they were required to live in the basement when at home. According to the record, the door to the basement was locked from the outside, and the basement windows were inoperable. The cinderblock-walled basement was not equipped with a bathroom, and the children were allowed brief, timed use of the bathroom on the ground floor. According to the state, "one or two times

2.

a day * * * the basement door would be unlocked, and the children would be allowed to come upstairs to use the bathroom." Each child was allowed five minutes in the bathroom; Z.W. was given an extra two minutes if she was menstruating. Otherwise, the children used a drain and bucket in the basement to relieve themselves. When freed by police, the basement smelled of urine and excrement.

{¶ 6} With respect to Count 4, the state asserted that it would have shown that appellant physically restrained F.W., who is handicapped (autism), in a cruel manner or for a prolonged period of time, that the restraint was excessive and that it created a substantial risk of serious physical harm to him. With respect to Count 5, the state asserted that it would have shown that appellant recklessly used corporal punishment against Z.W. for "minor infractions," by striking her with a "belt and other instruments" which created a risk of substantial physical harm to her.

{¶ 7} The trial court engaged in an extensive colloquy with appellant, including an explanation that she faced a maximum aggregate sentence of 72 months in prison and a $20,000 fine.

{¶ 8} The trial court found that appellant had been informed of her constitutional rights, that she understood the nature of the charges, the effect of her plea, as well as the maximum penalties which could be imposed, and that she had made a knowing, intelligent and voluntary decision to withdraw her former plea of not guilty and to tender an *Alford* plea of guilt. The court accepted appellant's plea, made findings of guilt, and ordered the preparation of a presentence investigation ("PSI").

3.

### III.  The sentencing hearing

{¶ 9} At the January 28, 2021 sentencing hearing, appellant's counsel urged the court to impose community control in lieu of prison.  Counsel cited the absence of any criminal record, appellant's "active engagement" in parenting classes, and the fact that she had "suffer[ed] through collateral consequences," including being "cut off" from her biological children for almost a year, a "brief stint" of confinement, and her full compliance with all court orders during the pendency of the case "all while maintaining gainful employment."  Counsel expressly denied that appellant had acted in a "malicious or abusive" manner and argued that her client merely lacked adequate skills to "parent two special needs teenagers."

{¶ 10} Appellant also spoke, professing to take "responsibility for any of [her] wrongdoings."  She claimed to love all four of her children equally and blamed her lack of parenting skills and her own "negative upbringing" for any mistakes she had made.

{¶ 11} The state countered that appellant had shown "zero remorse" and had instead called the victims "liars * * * thieves * * * and bedwetters."  And, it noted that F.W. only wet himself when he was awake, and only then "because he was only allowed to use the bathroom at certain times."  As punishment, F.W. was forced to sleep on a "deflated air mattress."  It told the court that, since being removed from the co-defendants, the victims have "become smart, successful and productive citizens despite the defendants' torment."

4.

{¶ 12} Both victims provided victim impact statements. Z.W. gave several examples of the breadth of psychological abuse she suffered at the hands of appellant. To begin, although the house was equipped with a washer and dryer, Z.W. was required to hand-wash her own clothes in a bucket outside or purchase detergent *from appellant*. She was also forced to sell baked goods outside the home to raise money for household goods, like toilet paper. Z.W. shared her sorrow over being deprived of being a "big sister" to the younger girls who were barred from talking, or even looking, at either victim. According to Z.W., all the siblings came to understand that "we could not be together." Although the family had "multiple counselors," Z.W. could not speak truthfully to them because "it made [appellant] look bad." Z.W. expressed skepticism over appellant's embrace of parenting classes, pointing out that "[a]ny person would know not to lock their kids up. * * * I don't believe any kind of classes will fix any of that. * * * It's not much about parenting, it's more about the people they are." And, Z.W. rejected appellant's claim that she "loved" her, given that appellant "told [Z.W.] for years that she wanted [her] to get hit by a bus." Z.W. requested that appellant receive the "highest sentence."

{¶ 13} F.W. told the court that he had been "locked in the basement with no way out * * * for three years." Referring to a picture of all four siblings in a car, F.W. said "this is how it would look * * * whenever we were in the car[.] * * * [W]e had to be looking out the window [because we were] not allowed to look at our sisters." As a result

5.

of the abuse, F.W. "changed mentally" by, for example, not showing emotions. This often led appellant to become "irritated" and then "hit" F.W. for "not having a reaction." As a result of being "hit often," F.W. explained that he "flinch[es] easier than most people do." He also moves "faster," which he attributed to appellant "rushing [him] whenever [he] did anything because she didn't want to see [his] face." F.W. told the court that he questions whether he is, in fact, autistic. In his words, "[a]s far as I know, it could have been the circumstances that made me act this way." Like his sister, F.W. requested that appellant (and his father) receive the "longest sentence" because "they should pay for what they did" and because "when they get out, I [will] be an adult [and will] able to talk to them as an adult to an adult."

{¶ 14} Before announcing its sentence, the court commented that it had reviewed "over 1300 pages of documentation" and viewed video statements given by the victims and the victims' younger sisters. The court was "struck" by the victims who, despite being called "untruthful, rebellious and deceitful," managed to provide "detailed and separate" statements that were "linear, coherent [and] gut wrenching but logical." The court "marvel[ed]" not just at the victims' "survival skills" but also at their ability to "progress[] in school after spending hours upon hours upon days locked in a dingy basement, urinating in drains [and] defecating in buckets."

{¶ 15} With regard to its sentence, the court said,

6.

[The victims] have been let down by their biological parents since their birth. * * * But nothing during that time compares to the last several years of their life.

The remarriage of their father to [appellant] gave a fake appearance of stability that became their new normal. It was also when the intentional abuse started and their father did not protect them. The amount of adverse childhood experiences these children have faced is off the charts. * * * I fear these young people will be maneuvering around damage for the rest of their lives.

Sadly I don't know what is more appalling, is it the horrible things that happened to these kids, or the amount of time calls were made to get them help from witnesses, neighbors or others that were too easily waved off because the perpetrators would maintain such a sweet and warm demeanor when inquiries were made[?]

How easy it was to send people away when the stepmother [i.e. the appellant] laments how hard it is to take care of special needs children and a rebellious teen.

The controlling psychological abuse of their rigid stepmother was a minefield that [the victims] were not equipped to succeed in. * * * I will tell you, it's the words of one of [the younger biological girls] that confirmed for me that the two of you are monsters. No matter what you

look like on the outside, when one of your sweet babies was asked about her older siblings, her immediate response was, always running. The interviewer asked, to where, and your daughter said, "to the bathroom." * * *

Th[at] [same] child was asked if her brother and sister shared a room, she answered, yes. * * * When asked why [she had never been and did not want to go down there] she stated because my mom will keep me downstairs in the basement. This baby was five years old. * * *

I won't give you the dignity of calling you parents because real parents would never intentionally hurt their children the way the two of you chose to do.

[Appellant], you have earned the sentence that the court will be giving, for the lack of conscious you had, and for inflicting physical and psychological abuse on your two stepchildren.

{¶ 16} In its February 3, 2021 journal entry, the trial court sentenced appellant to serve 30 months in prison as to Count 4 and 30 months as to Count 5, to be served consecutively to one another, for an aggregate prison term of 60 months. It also imposed a mandatory three-year term of post-release control, as to each count.

{¶ 17} Appellant raises the following assignment of error:

[T]he trial court did not give proper consideration to the statutory directives of O.R.C. 2929.11 and O.R.C. 2929.12 in ordering her to serve a five years [sic] OCRC term of incarceration.

### IV. Law and Analysis

{¶ 18} We review a challenge to a felony sentence under R.C. 2953.08(G)(2). R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 19} Appellant does not complain that her sentence violated any of the statutes identified in R.C. 2953.08(G)(2)(a), leaving only Section (G)(2)(b) as the basis for challenging her sentence—i.e., whether the sentence is "otherwise contrary to law."

{¶ 20} Here, appellant argues that the trial court's sentence is "contrary to law" because the trial court did not "give proper consideration" to the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12 when sentencing her to a prison term instead of community control. As she did

9.

at sentencing, appellant argues that the trial court failed to consider all the mitigating factors set forth in R.C. 2929.12 when it sentenced her to prison. She insists that her lack of a criminal record, her active engagement in parenting classes, her compliance with all court orders, and the "collateral consequences" she has already faced warranted a sentence of community control, rather than prison.

{¶ 21} Although a trial court must comply with R.C. 2929.11 and R.C. 2929.12 when fashioning a felony sentence, "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 20, citing *State v. Wilson,* 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31. In fact, the trial court's consideration of the factors set forth in R.C. 2929.11 and 2929.12 is presumed even on a silent record. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1; *State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94, (1992).

{¶ 22} Moreover, under *Jones*, an appellate court may not "independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12," nor may it "modify or vacate a sentence based on its view that the sentence is not supported by the record under [those statutes]." *Jones* at ¶ 39, 42; *see also State v. Toles,* Slip Opinion No. 2021-Ohio-3531, ¶ 1 (Affirming sentencing judgment under the authority of *Jones).* Accordingly, we are precluded from reviewing a felony sentence "where—as here—the appellant's sole contention is that the trial court improperly considered the factors of R.C.

10.

2929.11 or 2929.12 when fashioning that sentence." *State v. Stenson,* 6th Dist. Lucas No. L-20-1074, 2021-Ohio-2256, ¶ 9, citing *Jones* at ¶ 42; s*ee also State v. Orzechowski,* 6th Dist. Wood No. WD-20-029, 2021-Ohio-985, ¶ 13-14 ("In light of *Jones,* assigning error to the trial court's imposition of sentence as contrary to law based solely on its consideration of R.C. 2929.11 and 2929.12 is no longer grounds for this court to find reversible error.").

{¶ 23} Because R.C. 2953.08(G)(2) does not authorize this court to consider appellant's argument, we find appellant's sole assignment of error not well-taken.

### V. Conclusion

{¶ 24} For these reasons, appellant's assignment of error is not well taken, and we affirm the February 2, 2021 judgment of the Lucas County Court of Common Pleas. Wilson is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                    JUDGE
Thomas J. Osowik, J.

Christine E. Mayle, J.           _____
CONCUR.                                         JUDGE

_____
                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.