[Cite as *State v. Smith*, 2022-Ohio-1783.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-56 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-629 |
| | : | |
| ASHLIEGH SMITH | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of May, 2022.

. . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964 & NATHAN D. BOONE, Atty. Reg. No. 0095986, 3725 Pentagon Boulevard, Suite 270, Beavercreek, Ohio 45431
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Ashliegh (aka Ashleigh) Smith pled guilty in the Clark County Court of Common Pleas to one count of endangering children, a felony of the second degree. The trial court sentenced her to a minimum of 7 years to a maximum of 10½ years in prison. Smith challenges her sentence on appeal. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} In August 2019, Smith's husband obtained custody of his then two-year-old niece, B.S., who had been removed from the custody of her biological parents. At that time, Smith and her husband also cared for their four children.

{¶ 3} On October 28, 2020, Smith and her husband took three-year-old B.S. to the hospital after Smith found her unresponsive. Smith initially reported that, around noon, the children were running and chasing each other, and B.S. fell and hit her head on a wooden coffee table. B.S. seemed fine and laid down for a nap at 1:30 p.m. Smith checked on her periodically and did not notice anything wrong. At approximately 4:35 p.m., Smith found B.S. screaming, but she would not open her eyes and wake up. Smith called her husband, who came home from work, and they took B.S. to the hospital. B.S. was taken by Care Flight to Dayton Children's Hospital.

{¶ 4} Medical personnel found that B.S. had suffered a traumatic brain injury with hypoxic-ischemic injury and subdural hematoma. She also was found to have multiple healing fractures of the skull, clavicle and fingers, as well as extensive cutaneous (skin) injuries over nearly every part of her body. During a neurological assessment in January

2021, B.S. demonstrated significant impairments in her visual reception, fine motor skills, receptive language, and expressive language. She had left-sided weakness, made some sounds but no words, was fed via a gastrostomy tube (G-tube), and used a wheelchair. B.S. had severe global developmental delays and suffered permanent disabling harm.

{¶ 5} Dr. Jonathan Thackeray, child abuse pediatrician at Dayton Children's Hospital, opined that B.S.'s injuries were not consistent with Smith's version of events. He stated that the child's injuries were the types of injuries sustained from multiple acceleration-deceleration events, commonly seen with a shaking-type mechanism, and that she would have exhibited symptoms almost immediately with vomiting, unresponsiveness, seizure activity, and/or altered mental state. B.S.'s extensive subgaleal hematoma was not consistent with a single impact injury. In addition, Smith's report did not account for the multiple healing factures, which were sustained many days to weeks before October 28, 2020, or the extensive cutaneous injuries. Dr. Thackery noted that many, if not all, of the fractures would have been recognizable to B.S.'s caregivers.

{¶ 6} It appears that Smith initially was charged with felonious assault and endangering children in Clark C.P. No. 2020-CR-664A. (The record of Case No. 2020-CR-664A is not part of this record.) On September 27, 2021, Smith pled guilty to a bill of information charging one count of endangering children, in violation of R.C. 2919.22(B)(1), a felony of the second degree pursuant to R.C. 2919.22(E)(2)(d). In exchange for the plea, the State agreed to dismiss the indictment in Case No. 2020-CR-

664A, to remain silent at sentencing, and not to object to any motion for judicial release. The parties agreed to a presentence investigation.

{¶ 7} The presentence investigation report (PSI) included Smith's version of events and information about her criminal history (none), employment history, social history, and medical history, including mental health. Also included were a transcript of a forensic interview with Smith's oldest child, law enforcement reports about the incident, extensive medical records for B.S. stemming from the incident, photographs of B.S. in the hospital and of, presumably, Smith's home, the risk assessment (ORAS) report, victim impact statements submitted on B.S.'s behalf by her grandmother and grandaunt, and copies of the bill of information and plea agreement.

{¶ 8} In her statements to the presentence investigator, Smith acknowledged that she had disciplined B.S. while angry, causing significant injury; she described it as "a bad judgment call on a bad day." Smith expressed remorse for her behavior and for failing B.S. She denied knowledge of previous injuries identified by medical professionals.

{¶ 9} Defense counsel submitted a sentencing memorandum on Smith's behalf. While the memorandum mentioned Smith's personal successes in overcoming adversity, the memorandum emphasized that B.S. had behavioral issues that included self-harming and that Smith took "fault and responsibility for the one act that will haunt her for the rest of her life[.]" Smith "outright reject[ed] that she had fault or blame" for any additional injuries identified in B.S.'s medical records or for failing to obtain treatment for B.S. The memorandum indicated that Smith had struck B.S. "harder than she wishes she ever did" and that the child struck her head on a table, causing serious injury. Counsel asserted

that Smith recognized what she had done and immediately sought medical attention for B.S. Defense counsel argued that the sentencing factors supported a sentence of community control.

{¶ 10} More than 20 friends and family members, including B.S.'s grandfather, wrote letters on Smith's behalf. The letters described Smith as a caring and compassionate person and a loving mother to her children. Some letters discussed B.S.'s behavior, including her "acting out," banging her head, and picking at scabs.

{¶ 11} At sentencing, the trial court heard from B.S.'s grandmother, defense counsel, Smith, and Smith's mother. Before imposing sentence, the trial court discussed the sentencing factors, finding that B.S. had suffered serious physical harm, that Smith's relationship to B.S. had facilitated the offense, that Smith did not have genuine remorse, and that her ORAS score was high due to an override. The court noted that B.S. came from a troubled home and that Smith had previously led a law-abiding life. The court concluded that a prison sentence was appropriate and, after highlighting the report of Dr. Thackeray and other medical records, it imposed a prison sentence of a minimum of 7 years to a maximum of 10½ years in prison.

{¶ 12} Smith appeals from her conviction, raising two assignments of error.

## II. Review of Smith's Sentence

{¶ 13} Both of Smith's assignments of error challenge her sentence. First, she claims that the trial court failed to adequately consider R.C. 2929.11 and R.C. 2929.12 and "abused its discretion" in sentencing her. Second, Smith asserts that the trial court erred in imposing a sentence that is contrary to law because the court's findings regarding

remorse and recidivism were not supported by the record.

{¶ 14} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 15} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 16} The Ohio Supreme Court recently stated that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. "When reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we do not analyze whether those sentences are unsupported

by the record." *State v. McDaniel*, 2d Dist. Darke No. 2020-CA-3, 2021-Ohio-1519, ¶ 11, citing *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18; *Jones* at ¶ 26-29. Instead, "[w]e simply must determine whether those sentences are contrary to law." *Dorsey* at ¶ 18.

{¶ 17} "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." (Citation omitted.) *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.). Smith does not dispute that her sentence falls within the statutory range for a second-degree felony.

{¶ 18} In this case, the trial court complied with its obligation to consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. The court expressly stated at sentencing that it had considered the purposes and principles of sentencing and the seriousness and recidivism factors. It stated that it also reviewed the need for deterrence, incapacitation, rehabilitation, and restitution, and the sentencing guidelines under R.C. 2929.13.

{¶ 19} The court additionally made detailed findings regarding several of the sentencing factors and found that a combination of community control sanctions would demean the seriousness of Smith's conduct and the impact on B.S. It correspondingly found that a sentence of imprisonment was commensurate with the seriousness of Smith's conduct and the impact on B.S. and would not place an unnecessary burden on state governmental resources. The court told Smith that it had considered "not only the

statements that were presented to the Court from the parties, the victim-impact statement, the Defense statement but also the extensive medical records" in determining the appropriate prison sentence, and the court read portions of Dr. Thackeray's report describing the nature and severity of B.S.'s injuries.

{¶ 20} Upon review of the record, the trial court's imposition of its prison sentence was not contrary to law. Smith's claims that her sentence was not supported by the record under R.C. 2929.11 and R.C. 2929.12 and that the court erred in its conclusions regarding her remorse and risk of recidivism are precluded by *Jones*.

{¶ 21} Smith's assignments of error are overruled.

### III. Conclusion

{¶ 22} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and LEWIS, J., concur.

Copies sent to:

Ian A. Richardson
Thomas M. Kollin
Nathan D. Boone
Hon. Richard J. O'Neill