[Cite as *State v. Goddard*, 2023-Ohio-1701.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-06-014 |
| | : | O P I N I O N |
| - vs - | | 5/22/2023 |
| | : | |
| ASHLEY A. GODDARD, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20210118


Nicholas A. Adkins, Madison County Prosecuting Attorney, Rachel M. Price, and Michael S. Klamo, Assistant Prosecuting Attorneys, for appellee.

Shannon M. Treynor, for appellant.



**BYRNE, J.**

{¶ 1} Ashley Goddard pleaded guilty to one count of aggravated vehicular assault in the Madison County Court of Common Pleas. The court sentenced her to 48 months in prison. Goddard appeals her sentence. For the reasons described below, we affirm the sentence.

## I. Factual and Procedural Background

{¶ 2}   On May 18, 2021, Goddard—driving at a high rate of speed on State Route 42 in Madison County—crashed her vehicle into an occupied, stationary vehicle.  The crash injured multiple people, including a two-year-old child who suffered significant injuries. Goddard had buprenorphine and THC in her system at the time of the crash.

{¶ 3}   In October 2021, a Madison County grand jury indicted Goddard on three counts of aggravated vehicular assault and three counts of vehicular assault. All the aggravated vehicular assault counts were third-degree felonies.  All the vehicular assault counts were fourth-degree felonies.

{¶ 4}   In April 2022, Goddard and the state entered into a plea agreement.  Goddard agreed to plead guilty to one count of aggravated vehicular assault.  In return, the state agreed to seek dismissal of the remaining counts.

{¶ 5}   The record of the plea hearing was not included in the appellate record. However, an entry indicates that the trial court conducted a Crim.R. 11 colloquy and informed Goddard of the various rights she was foregoing by pleading guilty.  Additionally, the court informed Goddard that she faced a mandatory sentence of 12, 18, 24, 30, 36, 42, 48, 54, or 60 months in prison.  After determining that Goddard's plea was made knowingly and voluntarily, the court accepted Goddard's plea and found her guilty of aggravated vehicular assault.

{¶ 6}   Goddard filed a sentencing memorandum prior to sentencing.  In it, Goddard detailed her personal history, including her history of substance abuse issues.  Goddard set forth various arguments in favor of leniency premised upon the purposes and principles of felony sentencing as set forth under R.C. 2929.11 and the seriousness and recidivism factors set forth under R.C. 2929.12.

{¶ 7}   At the sentencing hearing, the court summarized the contents of the

presentence-investigative report and the nature of the offense:

> The presentence report indicates the underlying fact pattern that gave rise to the charges occurred on May 18, 2021. At that time the Defendant was traveling northbound on State Route 42, ultimately rear-ended a vehicle that had stopped in the northbound lane attempting to make a left-hand turn into the Speedway.
>
> A subsequent investigation revealed that the speed of Ms. Goddard's vehicle at the point of contact was 61 miles an hour and that in short proximity prior to that the vehicle had been traveling at roughly 70 to 80 miles per hour.
>
> The police report suggested some signs or indications of impairment. Undoubtedly, that would have been a matter that would have been of significant litigation had this matter gone to trial.
>
> A subsequent urine test did reveal a positive test for buprenorphine. The Defendant did have a Suboxone prescription. Additionally, THC was indicated in the amount of 396 nanograms per milliliter. The memorandum suggests that the Defendant had acquired a medical marijuana license.
>
> Multiple victims required treatment. The striking of the immediate victim's vehicle caused that victim to lurch forward into the southbound lane where a southbound vehicle was then struck resulting in injuries to [Victim 1] who ultimately had to be treated for a fractured thumb. [Victim 2] was the driver of the immediate vehicle that was struck. I'm not certain she was the driver, but she and [Victim 3] were the adults in the vehicle. There was a 2-year-old, [Victim 4], who had to be Life-Flighted with significant injuries.

{¶ 8} The court went on to review Goddard's history of involvement in the criminal justice system. The court noted convictions for OVI in 2008 and 2011, for felony grand theft of a motor vehicle in 2008, for possession of heroin in 2008, for felony possession of Xanax occurring five months after the motor vehicle theft charge, and for counterfeit or controlled substances in 2016. The court observed that Goddard had been ordered to probation in 2008, which probation included drug court treatment, suggesting that her substance abuse issues had been identified at that time.

{¶ 9}   Goddard's attorney then offered various arguments in mitigation, essentially reiterating most of the information contained in Goddard's sentencing memorandum.  The state then presented its argument based on the seriousness and recidivism factors of R.C. 2929.12.  The state noted that it had provided the court with Victim 4's medical records and that Victim 4 had suffered the most serious injuries of the three victims that had physical injuries.

{¶ 10}   Victim 2, the mother of Victim 4, then spoke:

> That was the worst day of my life.  I know what my baby's blood smells like.  And I shouldn't have to say that.  He had bones sticking out of his legs.  And you[1] came up to me and told me to calm down.  That was – that was bad.  That was so bad.
>
> And I want to give you the benefit of the doubt because I know you're a mother and I know you feel bad.  You've got to.  And I understand recovering addiction.  But something's got to change, man.  You've got to do something.
>
> And I'm going to have nightmares for the rest of my life.  They said [Victim 4] is probably going to forget about it one day, and I hope he does.  He's going to have to have another surgery on his jaw when he is a teenager because it was shattered.  Every bone in his face was broken.  His teeth were falling out.
>
> You did that to my baby.  He has to live with that forever.  He still has the night terrors.  He screams in the middle of the night.  Nothing we can do about it.  We were in the hospital for a week, and he screamed and screamed and cried the whole time.  He was confused and scared.  That was the worst part is how scared he was.  I couldn't do anything about it.
>
> My parents have heard his screaming in the middle of the night.  [Victim 4's] dad had to deal with it, too.  He was in the hospital with us the entire time.  He was at the hospital first because I had to go because they thought I had a concussion.  But, thankfully, I didn't.
>
> But we will all have to live with that for the rest of our lives.  [Victim 4] can't even eat an apple because his teeth may break out.  And he'll be four soon in a few months.  That's going to really mess him up. You've got to do something.  You've got to

---

1.  Here, and in most of her statement, Victim 2 was addressing Goddard directly.

change this. Thank you.

{¶ 11} Goddard then spoke and apologized to Victim 2 for her actions. Next, the court addressed Goddard. The court noted that the presentence-investigative report contained photographs of the vehicles and the injuries to the victims. The court noted that based on the photographs and the fact that Victim 4 was in the backseat of the vehicle, it was "stunning" that Victim 4 was still alive.

{¶ 12} The court observed that regardless of whether Goddard was in fact impaired, she was operating her vehicle in an extremely reckless fashion. The court indicated its familiarity with the stretch of road where the accident occurred and recalled that it was a 45 mile per hour zone and that "there's a reason for that." The court noted that Goddard lived in the area and would have been aware of the amount of traffic in that area. The court described driving through that area at such a high rate of speed as "playing Russian roulette."

{¶ 13} Ultimately, the court stated,

> After reviewing the seriousness of the offense, the recidivism factors, and weighing those factors against the purposes and principles of sentencing, it's the judgment of the Court that you are not amenable to community control sanctions and that a prison term is mandatory.
>
> Ms. Goddard, it's the judgment of the Court that you be sentenced to a mandatory term of 48 months in the Department of Corrections.

{¶ 14} In the sentencing entry, the court stated the following:

> The Court finds this offense is **MORE** serious because one of the four victims, and also [Victim 1's] fracture to the thumb could constitute serious physical harm, [Victim 4] suffered serious physical harm as a result of the offense and was flown to Children's Hospital in Columbus, Ohio. Using other relevant factors, the Defendant was speeding, traveling between 70-80 mph, prior to the crash and approximately 61 mph at impact. She was also under the influence of marijuana as well as prescribed Buprenorphine (Suboxone) which warns against

operating machinery while using.

The Court finds that the recidivism factors indicate a **HIGH** risk of recidivism. The Defendant had not previously been adjudicated a delinquent child. The Defendant has a history of criminal convictions. The Defendant has not responded favorably to sanctions previously imposed for criminal convictions. The Defendant has been placed on probation three (3) times. The Defendant has a drug overlay involving marijuana. She also has a drug overlay involving heroin but reports that she has been sober for three (3) years. The Defendant does show genuine remorse for the offense. The Defendant admits partial culpability for her conduct. The Defendant is not denying that she was responsible for the incident but is denying that she was impaired. There are no factors that mitigate her conduct.

{¶ 15} Goddard appealed, raising one assignment of error.

## II. Law and Analysis

{¶ 16} Goddard's sole assignment of error states:

{¶ 17} THE COURT ABUSED ITS DISCRETION BY IMPOSING A SENTENCE OF 48 MONTHS INSTEAD OF A SENTENCE CLOSER TO THE LOWER RANGE OF POSSIBLE SENTENCES FOR A VIOLATION OF 2903.08(A)(1)(a).

{¶ 18} Goddard argues that her 48-month sentence was not supported by the trial court's findings under R.C. 2929.11 and 2929.12. Goddard contends the trial court noted only one R.C. 2929.12 factor indicating that the offense was more serious, and that the court noted only two of five R.C. 2929.12 factors indicating a high risk of recidivism. Goddard argues that the court should have instead found four of five factors weighing in favor of a low risk of recidivism. Goddard contends that the 48-month sentence was not "mathematically" supported by the trial court's findings under R.C. 2929.11 and 2929.12. In summary, Goddard argues that the trial court should have both evaluated and weighed the R.C. 2929.11 and 2929.12 factors differently than it did.

{¶ 19} R.C. 2953.08(G)(2) defines the standard of review for felony-sentencing

appeals. *State v. Day*, 12th Dist. Warren No. CA2020-07-042 and CA2020-7-043, 2021-Ohio-164, ¶ 6. In pertinent part, R.C. 2953.08(G)(2) provides:

> The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 20} Goddard cites *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, for the proposition that this court can vacate or modify her sentence if we find by clear and convincing evidence that the record does not support the trial court's findings under R.C. 2929.11 and 2929.12. However, in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, the Ohio Supreme Court held that language in *Marcum* suggesting that we could do so was dicta. *Id*. at ¶ 27. In *Jones*, the supreme court clarified the scope of our review under R.C. 2953.08(G)(2)(a) and (b) when presented with arguments like those Goddard makes—that is, when confronted with arguments concerning a trial court's consideration of the factors set forth in R.C. 2929.11 and 2929.12.

{¶ 21} First, the Ohio Supreme Court noted that R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if the appellate court clearly and convincingly finds that the record does not support the sentencing court's findings under certain specified statutory provisions listed in the statute (that is, R.C. 2929.13[B] or [D], R.C. 2929.14[B][2][e] or [C][4], or R.C. 2929.20[I]). *Id.* at ¶ 28. However, the court noted that R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a), and therefore held that R.C. 2953.08(G)(2)(a) does not permit an appellate court to modify or vacate a sentence based on a lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12. *Id.* at ¶ 28-29. R.C. 2953.08(G)(2)(a) therefore does not apply

to our review of Goddard's arguments concerning the trial court's consideration of the factors under R.C. 2929.11 and 2929.12.

{¶ 22} Second, the Ohio Supreme Court held that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39. The supreme court reasoned that "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32. Instead, a sentence is not clearly and convincingly contrary to law where a trial court "'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.'" *State v. Lopez-Cruz*, 12th Dist. Butler No. CA2022-07-068, 2023-Ohio-257, ¶ 8, quoting *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

{¶ 23} As such, we lack the authority to modify or vacate Goddard's sentence based on Goddard's argument that the sentence was not supported by the trial court's findings under R.C. 2929.11 and 2929.12. Instead, we are limited to reviewing whether Goddard has presented clear and convincing evidence that her sentence is "otherwise contrary to law."

{¶ 24} Here, the record reflects that the trial court considered the purposes and principles of sentencing as set forth in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12. Furthermore, the trial court properly imposed postrelease control and Goddard's sentence fell within the permissible statutory range. Goddard's sentence was therefore not contrary to law. We overrule Goddard's sole assignment of error.

### III. Conclusion

{¶ 25} We overrule Goddard's sole assignment of error and affirm the sentence imposed by the trial court.

{¶ 26} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.