[Cite as *State v. Elkins*, 2024-Ohio-68.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                No. 112582

    v.                                 :

STEVEN ELKINS,                          :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 11, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-22-673043-A and CR-23-678100-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Lisa J. Turoso, Assistant Prosecuting
Attorney, *for appellee*.

Eric M. Levy, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Steven Elkins ("Elkins") appeals the trial court's journal entry sentencing him to consecutive prison sentences. After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I.   Facts and Procedural History

{¶ 2}   Elkins pled guilty to attempted domestic violence, a fourth-degree felony in violation of R.C. 2923.02 and 2919.25(A); "theft; aggravated theft," a first-degree misdemeanor in violation of R.C. 2913.02(A)(1); and "violating protection order, consent agreement, anti-stalking," a fifth-degree felony in violation of R.C. 2919.27(A)(1).[1]

{¶ 3}   At Elkins's sentencing hearing, the court heard from the state of Ohio, Elkins's pretrial probation officer, the victim ("C.F."), Elkins's attorney, and Elkins. The trial court also noted that it had reviewed the presentence-investigation report ("PSI") and a report from the Risk-Management Group of the High-Risk Domestic-Violence Docket (the "HRDV Report").

{¶ 4}   The state of Ohio informed the court that the following events led to Elkins's indictment.  Elkins exited a bar and confronted C.F., he "took [C.F.'s] phone and her purse [and] dragged her on the sidewalk by her hair."  When police arrived, they "saw abrasions on [C.F.'s] right foot and leg and her left biceps."  A video of the encounter was played for the court.[2]

{¶ 5}   The court heard from the pretrial-probation officer that while Elkins was on bond awaiting trial for these cases, he tested positive for alcohol, marijuana,

---

[1] The attempted domestic-violence and theft charges stem from an indictment in Cuyahoga C.P. No. CR-22-673043-A (the "attempted DV case") and the violation of protection order charge stems from an indictment in Cuyahoga C.P. No. CR-23-678100-A.

[2] A copy of the video was not included in the record on appeal.

and Adderall. Elkins further "attempted to falsify [a random] drug test * * *." When he resubmitted for that screening, he tested "positive for alcohol and amphetamines with Adderall." The pretrial-probation officer stated that while Elkins was on bond for the attempted DV case, a home visit was conducted and Elkins was arrested for violation of a protection order because the victim, C.F., was at his home.

{¶ 6} Elkins addressed the court. According to him, a prior conviction for domestic violence with a previous girlfriend was his "fault. Bad decisions. Drinking." After serving his three-year prison sentence for that conviction, he "g[ot] into another toxic relationship," the relationship with C.F. When detailing his relationship with C.F., Elkins explained that he met her on a dating website where she was described as being 24 years old. According to Elkins, he later learned that C.F. was 19, she had been diagnosed with bipolar disorder, she was a prostitute, and he owed a "pimp * * * three or four grand."

{¶ 7} Elkins detailed for the court his version of events that led to the domestic-violence and theft charges in this case. According to Elkins, while he and C.F. were driving, C.F. grabbed his phone, exited the vehicle, and went into a bar. Elkins found C.F. inside a bar and asked for his phone back. C.F. threatened to call the police and Elkins "figured [he would] start walking away" when C.F. claimed she would throw his phone in the sewer. Elkins claimed that he responded as follows: "So I looked at her and I'm, like, oh. So I went over — I didn't pull her hair, as you see. I put my arm around her shoulder, hold her left arm with my left hand, pull the phone out, and just took off running." Elkins claimed before he left, C.F. punched

him five times.  According to Elkins, he did not hurt C.F., bruise her, pull her hair, or steal her purse.

{¶ 8}  C.F. addressed the court and admitted that she and Elkins have gotten into mutually physical altercations.  C.F. explained that she has a scar on her nose "from when he beat the s* *t * * * out of [her and] threw cat litter in [her] face * * *."  According to C.F., Elkins had his daughter text her the day before sentencing saying, "My dad loves you and that he hopes you drop the TPO."

{¶ 9}  The HRDV Report states that it "is a supplemental report that provides information not contained within the PSI, specifically related to risk of future intimate partner violence."

{¶ 10}  The HRDV Report presented to the court, states that Elkins's "documented history of intimate partner violence * * * reports include multiple strangulations, jealousy, stalking, controlling behavior, violations of protection orders and named victim believing [Elkins] is capable of killing her."  The report detailed incidents between Elkins and a former partner, J.S.  Allegations between Elkins and J.S. span from April 23, 2013, through December 30, 2018.  According to these allegations, Elkins grabbed J.S. by the throat and strangled her on multiple occasions.  The HRDV Report lists the following "risk factors" for the current offense: strangulation, offense took place in public, visible injuries, Elkins and victim recently ended their relationship, and violation of a protection order while on court-supervised release.

{¶ 11} After hearing these statements and considering the reports, the trial court sentenced Elkins to 15 months in prison on the attempted domestic-violence conviction and 120 days in jail on the "theft; aggravated theft" conviction. These two sentences were ordered to run concurrently to each other. The court further sentenced Elkins to 12 months in prison for violating the protection order. The court ordered that Elkins's two prison sentences be served consecutively for an aggregate prison sentence of 27 months.

{¶ 12} It is from this order that Elkins appeals, raising the following assignment of error:

> The record does not support the consecutive sentence imposed upon [Elkins] and the findings required to impose consecutive sentences were incomplete and contrary to law.

## II.  Law and Analysis

{¶ 13} "[T]o impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. Pursuant to R.C. 2929.14(C)(4), the court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender"; "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and at least one of the following three factors:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 14} R.C. 2953.08(G)(2), which guides our review of consecutive-felony sentences, "compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under * * * (C)(4) of section 2929.14[.]" *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *see also State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 28; *State v. Roberts*, 2017-Ohio-9014, 101 N.E.3d 1067, ¶ 10 (8th Dist.) ("[i]f the court made the required findings in order to impose consecutive sentences, we must affirm those sentences unless we 'clearly and convincingly' find that the record does not support the court's findings," quoting R.C. 2953.08(G)(2)); *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 19 (8th Dist.).

The statute is written in the negative; that is, an appellate court does not need to clearly and convincingly find that the record supports the findings in order to affirm, but instead must clearly and convincingly find that the record does not support the findings in order to reverse or modify a sentence.

*Roberts* at ¶ 10.

{¶ 15} On appeal, Elkins raises three arguments for why he believes the trial court's imposition of consecutive prison sentences was improper. First, he argues

that the trial court did not "specify the specific basis used to make and support a consecutive sentence finding." Second, Elkins argues that the imposition of consecutive sentences is "not supported by the facts and record * * *." Finally, Elkins argues that if the imposition of consecutive sentences was proper "the aggregate sentence that resulted was too long * * *."

### A. Consecutive-Sentence Findings and Support in the Record

{¶ 16} First, for ease of discussion we review together whether the trial court made the requisite findings and whether those findings are supported by the record.

{¶ 17} Elkins argues the trial court did not make the required consecutive-sentence finding when it stated that "consecutive service of the prison term is necessary to protect the public from future crime or to punish the defendant." Elkins contends that "[t]his was a vital and required finding" because "a reviewing Court must know which factor the trial court relied upon to support the consecutive sentencing finding with specificity so it could determine if the record reflected the imposition of consecutive sentences." Thus, Elkins essentially argues that by not specifying either that consecutive sentences were necessary to protect the public or that they were necessary to punish the offender, this court cannot meaningfully review the finding. We disagree and find that we are able to meaningfully review whether the record does not support either or both of those findings and turn our review to that issue.

{¶ 18} Elkins argues that the "record is devoid of evidence" that consecutive sentences are necessary to protect the public from future crime or to punish the

offender and "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public." We disagree.

{¶ 19} The court stated that, based on the HRDV Report, it did not "have any problem putting together a pattern of [Elkins's] behavior." The court explained:

> The nature of violence in these reports is troubling, because it seems like your go-to is to put your hands around her throat. Burst capillaries in the eyes. The victim stating that she froze because she just thought she was going to die, which is not uncommon in strangulation in the recollection of being strangled. On multiple occasions, she indicate[d] that she just gave up and stopped resisting, which is the human reaction to being strangled.

The HRDV report summarized at least six instances of Elkins grabbing his intimate partners by the neck or strangling them from 2013-2022.

{¶ 20} The court further stated that it was "concerned" for Elkins and the women in his life "because when a victim is strangled in an intimate-partner relationship, the risk of being killed at the perpetrator's hands is increased by seven and a half times * * *, it just skyrockets." The court continued, "That behavior alone really tells us a lot of what maybe you don't even know that you're capable of but what you could be capable of, and then we're dealing with a whole different situation."

{¶ 21} Further, the court heard from Elkins that after spending three years in prison for a domestic-violence conviction with a different victim, he entered the current relationship with C.F. that resulted in another domestic violence conviction.

{¶ 22} Accordingly, upon review of the record, we find that the court's findings, that the consecutive sentences are necessary to protect the public or punish Elkins and that consecutive sentences are not disproportionate to the seriousness of Elkins's conduct and the danger he poses to the public, are not clearly and convincingly unsupported by the record.

## B. Excessive Sentence

{¶ 23} Finally, Elkins argues that even if the imposition of consecutive sentences was proper; "the aggregate sentence that resulted was too long * * *." We disagree.

{¶ 24} In support of this position regarding his aggregate sentence, Elkins relies on the Ohio Supreme Court's decision in *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607 ("*Gwynne IV*"). However, during the pendency of this appeal the Ohio Supreme Court reconsidered and vacated the *Gwynne IV* opinion in *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851 ("*Gwynne V*").

{¶ 25} As stated, R.C. 2953.08(G)(2) guides our review of consecutive-felony sentences and "compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under * * * (C)(4) of section 2929.14[.]" *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22.

{¶ 26} Here, Elkins was ordered to serve his two prison sentences consecutively. As previously stated, the court made the requisite statutory findings and we did not find that those findings were unsupported by the record. Under these

circumstances, we find that Elkins's argument that his sentence is excessive when the court ran two prison sentences consecutively for a total term of 27 months of incarceration is not well taken. Elkins's sole assignment of error is overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
EILEEN T. GALLAGHER, J., CONCUR