**[Cite as *State v. Corrao*, 2024-Ohio-144.]**

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>Plaintiff-Appellee,<br><br>- vs -<br><br>ANTHONY CORRAO,<br><br>Defendant-Appellant. | CASE NO. 2023-L-040<br><br><br>Criminal Appeal from the<br>Court of Common Pleas<br><br><br>Trial Court No. 2022 CR 000827 |

**O P I N I O N**

Decided: January 16, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077(For Plaintiff-Appellee).

*Sarah G. Ogden*, Megargel, Eskridge, & Mullins, LLP, 231 South Chestnut Street, Ravenna, OH 44266 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Appellant, Anthony Corrao ("Corrao"), appeals his conviction in the Lake County Court of Common Pleas. Corrao pleaded guilty to one count of Identity Fraud of an Elderly or Disabled Victim, a fourth-degree felony, and four counts of Forgery of an Elderly or Disabled Victim, each fifth-degree felonies. The trial court sentenced Corrao to 18 months in prison for the single count of Identity Fraud, and 12 months in prison for each of the four counts of Forgery, to be served consecutively. In total, Corrao was

sentenced to 66 months in prison, ordered to pay $14,704.44 in restitution, and fined $50,000.00. For the following reasons, we affirm.

{¶2} Corrao was the victim's neighbor when she hired him in October of 2021. Initially, Corrao was hired to repair two gates on the victim's fence. The victim had recently separated from her husband of 25 years and began having health problems. Corrao offered to do some of the home maintenance around the victim's house that had become difficult for her to do, and he began to give her compliments. The two developed a friendship and the victim trusted Corrao. Corrao told the victim he would do some of the work for her at cost. Despite the promises to do more, Corrao put in one fence post in December of 2021.

{¶3} The victim gave Corrao sums of cash so that he could buy fencing and supplies. Corrao told the victim that he was storing the materials for the fencing at a friend's house. The victim continued to give Corrao money, believing that he was keeping track of what she paid him. Eventually the victim became concerned by Corrao's behavior. Corrao had either an abundance of energy or no energy. The victim questioned Corrao about drug use, which Corrao denied. At the sentencing hearing, the victim stated that she was initially unaware of how much money she had given Corrao until her daughter tallied it up for her. Corrao had earlier discouraged the victim from putting her daughters' names on her bank accounts. Corrao told the victim that her daughters would invade the victim's privacy and have access to all her financial information.

{¶4} In March of 2022, the victim was hospitalized for seizures. When released from the hospital, the victim decided to take a vacation with her daughters and grandsons in Florida. Corrao promised the victim that he would complete a list of maintenance and

2

chores by the time she returned. The victim gave Corrao a key to access her home while she was away.

{¶5}     While in Florida, the victim received a text requesting verification for unusual charges that appeared on her credit card. The victim had the credit card blocked because the charges were not hers. At the same time, Corrao was calling the victim several times a day. During those phone calls, Corrao asked the victim if she had hidden any cash in her house because he was out of money. The victim refused to tell Corrao where she had hidden her cash.

{¶6}     On the way home from Florida, a friend of the victim's daughter called the victim to tell her that her house had been raided. The friend said that it was seen on Facebook. When the victim returned home, all her hidden cash and multiple gift cards were gone. Later it was discovered that Corrao had forged checks in the victim's name, some made out to Corrao himself and some made out to an individual named Chad Policy ("Policy"). During the sentencing hearing, Corrao explained that Policy was an individual who helped Corrao work on the victim's house.

{¶7}     On August 5, 2022, the Lake County Grand Jury issued a 13-count indictment: Count 1, Burglary; Count 2, Identity Fraud Against a Person in a Protected Class; Count 3, Misuse of Credit Cards; Counts 4 and 5, Theft from a Person in a Protected Class; and Counts 6 through 13, Forgery of an Elderly or Disabled Victim. Corrao pleaded guilty to a negotiated plea to Counts 2, and 6 through 9. The remaining counts were dismissed.

{¶8}     A sentencing date was set for January 4, 2023. Corrao did not appear. Corrao wrote to the trial court to explain that he would not appear because of his health

3

conditions. Mr. Corrao recently had quadruple bypass surgery, was diagnosed with lung cancer, had a throat infection, and required surgery. A warrant was put out for Corrao's arrest for his failure to appear. Corrao was arrested, and a new sentencing date was set for February 1, 2023.

{¶9} At the February 1, 2023 sentencing hearing, Corrao expressed that he was remorseful for what he had done to the victim. Corrao stated that his health conditions contributed to his absence from the initial sentencing hearing. Corrao said that his health conditions have opened his eyes.

{¶10} Corrao's daughter and sister also spoke at the sentencing hearing and asked the trial court to be lenient on Corrao because he wants to change his life around. Corrao expressed that he does not want to die in prison.

{¶11} The victim gave a victim impact statement at the sentencing hearing. The victim explained the effect Corrao's actions had on her. The victim said that because of Corrao's actions, she has developed anxiety and was prescribed Klonopin to treat it. The victim stated that the work she needed done has still not been completed because she is too fearful of having strangers in her home. The victim expressed that she is fearful that Corrao will come after her or one of her family members. The victim expressed that Corrao's actions have changed her life.

{¶12} The victim's oldest daughter also spoke at the sentencing hearing. She said that her mother's personality changed because of Corrao's actions. The daughter has since installed cameras at the victim's home and said that her mother is now anxious and fearful someone might take advantage of her.

{¶13} The trial court sentenced Corrao to 66 months in prison. He now appeals.

4

{¶14} Corrao's sole assignment of error asserts: "The trial court erred by sentencing Mr. Corrao to maximum consecutive sentences."

{¶15} This Court recently noted in *State v. Lamb*, 11th Dist. Portage No. 2022-P-0084, 2023-Ohio-2834, ¶ 9-10 that:

> R.C. 2953.08(G) governs our review of felony sentences, and provides, in relevant part, that after an appellate court's review of the record, it "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand * * * if it clearly and convincingly finds * * * [t]hat the sentence is * * * contrary to law." R.C. 2953.08(G)(2)(b); *State v. Meeks*, 11th Dist. Ashtabula No. 2022-A-0060, 2023-Ohio-988, ¶ 11.
>
> A sentence is contrary to law when it is 'in violation of statute or legal regulations' * * *." *Meeks* at ¶ 11, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34. Thus, "'[a] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.'" *State v. Shannon*, 11th Dist. Trumbull No. 2020-T-0020, 2021-Ohio-789, ¶ 11, quoting *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 74; *see also State v. Wilson*, 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶ 18.

{¶16} In his brief, Corrao contends that his sentence is not supported by the record. Corrao argues that the court focused on his criminal history but failed to consider the impact of his recent health diagnoses and his expression of remorse. Corrao argues that the trial court placed unreasonable weight on his failure to appear at the initial sentencing hearing and the statement made by the victim's daughter.

{¶17} To the extent that Corrao is asking this Court to reweigh the evidence in the record, the Supreme Court of Ohio precludes such a review:

> The Supreme Court of Ohio has held that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate

5

court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. According to the court, "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42. As we have observed, "the competing factors in R.C. 2929.11 and 2929.12 are for the sentencing court to weigh, not the court of appeals." *State v. Stanley*, 11th Dist. Trumbull No. 2020-T-0039, 2021-Ohio-549, ¶ 12.

*State v. Haynes*, 11th Dist. Lake No. 2022-L-009, 2022-Ohio-4464, ¶ 38.

{¶18} In his brief, Corrao cites to *State v. Gwynne*, --- Ohio St.3d ----, 2022-Ohio-4607, --- N.E.3d ----, arguing that the Supreme Court of Ohio has clarified that an appellate court is to review consecutive sentences de novo, reweigh the trial court's findings, and consider the resulting aggregate sentence. However, while this case was pending on appeal, on October 25, 2023, the Supreme Court of Ohio vacated *Gwynne* on reconsideration, in *State v. Gwynne*, --- Ohio St.3d ----, 2023-Ohio-3851, --- N.E.3d ----. The plurality decision restored appellate review to the previous standard, instructing appellate courts to give deference to the trial court, that the sentence must clearly and convincingly not be supported by the record or otherwise be contrary to law before a reviewing court can modify the sentence. *See State v. Gwynne*, 2023-Ohio-3851, ¶ 15; *See also State v. Monachino,* 11th Dist. Portage No. 2022-P-0082, 2023-Ohio-4857, ¶ 16.

{¶19} During the February 1, 2023 sentencing hearing, the trial court explained that it considered Corrao's extensive criminal history encompassing 30 years of similar activity, resulting in at least eight separate prison stays. The court noted Corrao's

6

violations of post-release control, his failure to report while on post-release control, the impact statements of the victim and her daughter, and Corrao's failure to show up for his presentencing interview or psychological evaluation. The trial court further noted that it appears that Corrao groomed the victim, an elderly citizen, with the intention of taking advantage of her. The court considered Corrao's history in conjunction with his likelihood of recidivism, the severity of his offenses, and determined that the maximum allowed sentences permitted by R.C. 2929.14 were necessary to prevent the public from future harm by Corrao.

{¶20} Upon thorough review of the record, nothing indicates that Corrao's sentence is contrary to law. Corrao's sentences are within the permitted statutory framework of R.C. 2929.14. The appellate court cannot reweigh the evidence under R.C. 2929.11 and R.C. 2929.12 substituting the trial court's judgment for its own. Therefore, Corrao's sole assignment of error is without merit.

{¶21} For the foregoing reasons, we affirm.


EUGENE A. LUCCI, P.J.,

MARY JANE TRAPP, J.,

concur.

7