[Cite as *State v. Smalley*, 2024-Ohio-4532.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.     24CA012075 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RICHARD LEON SMALLEY | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No.     21CR104688 |

DECISION AND JOURNAL ENTRY

Dated: September 16, 2024

SUTTON, Judge.

{¶1} Defendant-Appellant, Richard Smalley II, appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} One evening, A.E. went to a bar to meet a male friend. Her male friend introduced her to Mr. Smalley, and the two chatted as they enjoyed their drinks. A.E. began to feel unwell after she drank a shot Mr. Smalley purchased. Shortly thereafter, her memories of that evening stopped. She could not remember what happened next or how she left the bar. The next thing she recalled was waking up to find Mr. Smalley having vaginal intercourse with her. A.E. repeatedly told him to stop. Mr. Smalley finally did so after she said she was going to throw up. A.E. was able to call a friend for help, and the friend alerted the police.

{¶3} Mr. Smalley was indicted on one count of sexual battery, a violation of R.C. 2907.03(A)(2). A jury found him guilty, and the trial court sentenced him to four years in prison. The court also classified him as a tier III sexual offender.

{¶4} Mr. Smalley now appeals from his conviction and raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

**[MR. SMALLEY] WAS DENIED THE OPPORTUNITY TO PRESENT A COMPLETE DEFENSE[.]**

{¶5} In his first assignment of error, Mr. Smalley argues the trial court violated his constitutional right to present a complete defense when it limited aspects of his cross-examination. For the following reasons, we reject his argument.

{¶6} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). "This Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." *State v. Wright*, 2006-Ohio-926, ¶ 5 (9th Dist.). An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶7} For the sake of context, we begin by summarizing the evidence the State presented against Mr. Smalley at trial. A.E. testified that she drove herself to a local bar one evening because she had arranged to meet a male friend there. The male friend introduced her to Mr. Smalley, whom A.E. had never met. She testified that she drank two alcoholic beverages that evening as well as a shot Mr. Smalley purchased. After drinking the shot, A.E. began to feel sick. She testified that she had no memory of what happened next and did not recall leaving the bar.

{¶8}   A.E. stated that the next thing she remembered was waking up to find Mr. Smalley on top of her.  She realized he was having vaginal intercourse with her and told him to stop.  She testified that she repeated herself, but Mr. Smalley said, "[f]**k that feels good[,]" and continued to have sex with her.  A.E. was not comfortable repeating Mr. Smalley's words for the jury, but she wrote them down for the prosecutor to read aloud.  She testified that Mr. Smalley continued to have sex with her until she told him she was going to throw up.

{¶9}   After Mr. Smalley moved off A.E., she was able to find her phone and call someone for help.  The man she called was a friend who would later become her husband.  When the future husband arrived with the police, A.E. stated, he had to carry her outside.  She described how she was partially unclothed and too disoriented to even dress herself.  A.E. went to the hospital for treatment before going to the Nord Center for a rape exam.

{¶10}   The bartender who served A.E. and Mr. Smalley recalled them having a few drinks that evening but indicated that neither A.E. nor her companions drank too much alcohol.  She testified that, later that night, she was at the bar when A.E. suddenly walked behind it.  The bartender said it looked as if A.E. might be getting ready to be sick in the trash can behind the bar.  As A.E. approached the trash can, however, she fell face first into it.  The bartender testified that Mr. Smalley came to help.  The bartender watched as he picked up A.E. and took her from the bar area.  She testified that he had to carry A.E. "like a baby" because "she could not walk and her head was back."

{¶11}   The male friend who met A.E. at the bar testified that he saw A.E. and Mr. Smalley chatting with one another after he introduced them.  He did not know how much alcohol A.E. drank but, at one point, he saw her and Mr. Smalley kissing.  He testified that A.E. later said she felt sick and went behind the bar.  He watched her fall over a trash can and collapse before someone

took her to the restroom. Subsequently, the male friend asked Mr. Smalley to give him a ride home, and both he and A.E. ended up in Mr. Smalley's car. The male friend testified that A.E. was already in the car when he came outside, so he did not know how she got there. He testified that she was seated in the front passenger's seat, had her eyes closed, and appeared to have either fallen asleep or passed out. He did not recall her speaking during the ride. He testified that Mr. Smalley took him home and left with A.E. It was his understanding that Mr. Smalley was taking A.E. home to sleep on his couch.

{¶12} A.E.'s future husband testified that he received a video call from A.E. that night. When he answered the call, she began screaming at him to come get her. He could see she did not have pants on, and she told him she did not know where she was. He testified A.E. was "in and out of it" and it was difficult to discern what she was saying. He quickly dressed as he continued to speak with her and called the police before he left his house. The future husband testified that he learned where A.E. was because he saw Mr. Smalley on the video call and Mr. Smalley gave him his address. He testified that his concern for A.E. caused him to ask Mr. Smalley whether he had engaged in sexual intercourse with A.E. or had otherwise touched her. He testified that Mr. Smalley said no.

{¶13} The future husband testified that he entered Mr. Smalley's house when he arrived with the police. He found A.E. in the bathroom, "[f]ace down on her hands and knees [with] no idea where she was or what was going on." The future husband said he had to carry A.E. outside because she could not walk. He kept A.E. in his car until an ambulance arrived to take her to the hospital. He testified that A.E. told him she had been sexually assaulted.

{¶14} Sergeant Dustin Thacker was dispatched to Mr. Smalley's house for a possible sexual assault. He arrived along with the future husband. The sergeant testified that A.E. was

hysterical, appeared to be intoxicated, and could not walk on her own. He heard A.E. say that Mr. Smalley had raped her. He then spoke with Mr. Smalley and asked him whether any sexual activity had occurred. Mr. Smalley told the sergeant that no sexual activity had occurred. He also denied seeing A.E. unclothed. Mr. Smalley said his juvenile daughter was at home and A.E. needed to leave because "she was vomiting and sick causing an issue at the house . . . ."

{¶15} There was testimony that A.E. went to the Nord Center directly after leaving the hospital. The nurse examiner who conducted her rape exam testified that A.E. appeared to be very distraught. A.E. told the nurse examiner she had become sick after having a few drinks and had never felt like that before. She could not remember anything until she awoke to find Mr. Smalley having sex with her. The nurse examiner found bruises on A.E.'s upper arm, inner thigh, left knee, and lower legs. She also testified that A.E.'s vaginal opening was swollen and red.

{¶16} Swabs taken from A.E.'s breast and neck produced a DNA profile that was consistent with Mr. Smalley's DNA profile. A forensic scientist also found male DNA present in samples taken from A.E.'s perianal area and underwear. The forensic scientist testified that the samples were not of a sufficient quantity to allow for DNA comparison. She agreed that the use of a condom could explain why no male DNA was found in A.E.'s vaginal swabs. There was testimony that, when the police executed a search warrant at Mr. Smalley's home, they found a used condom in his garbage can.

{¶17} A.E.'s ex-husband testified that he had just started working his third-shift job when he received a phone call from the future husband. The ex-husband learned A.E. had been taken to the hospital and agreed to meet her there so the future husband could return home to his children. The ex-husband testified that he had seen A.E. intoxicated during their nearly ten-year marriage but never to that extreme. He said she was "[v]ery out of it, black under her eyes, very groggy . .

. ." The ex-husband testified that he had to convince A.E. to go to the Nord Center because she was so upset and embarrassed about what had happened.

{¶18} The police later interviewed Mr. Smalley, and Sergeant Michael Mahony was present for that interview. He testified that Mr. Smalley described a consensual sexual encounter between himself and A.E., during which he wore a condom. Mr. Smalley told the police that A.E. began crying after they had sex and called someone on her phone. He said he lied when the future husband and the police asked him about any sexual activity because he did not want any problems.

{¶19} The defense sought to paint A.E. as a manipulator who made up stories to either strengthen or end her relationships. The defense argued that A.E. lied about Mr. Smalley sexually assaulting her to give the future husband a reason to rescue her. According to the defense, the alleged rape was the catalyst that brought them together. The defense also argued that, when A.E. tired of her marriage with the future husband, she lied about him hitting her. Mr. Smalley argues the trial court erred by not allowing him to adequately explore the domestic violence allegations A.E. brought against the future husband.

{¶20} When cross-examining A.E., the defense elicited testimony that she and the future husband were not in a romantic relationship when the incident with Mr. Smalley occurred. A.E. testified that they began dating a few months later and eventually married. The defense then asked A.E. whether she was still married to the future husband. The State objected to that question, and a sidebar discussion ensued. At its conclusion, the trial court overruled the State's objection and allowed the defense to ask A.E. about the status of her relationship with the future husband. A.E. testified that she was no longer married to him because he had hit her.

{¶21} When cross-examining the future husband, the defense asked him whether his relationship with A.E. had ended because he hit her. Over the State's objection, the future husband

was allowed to answer that question. He denied the accusation. The defense then asked him whether he had been convicted of domestic violence, and the future husband answered no. On redirect examination, the State asked the future husband whether he had been found guilty of disorderly conduct. The future husband admitted that charge without offering further details. When the defense sought to elicit the details on further cross-examination, the trial court would not allow it. The trial court also later refused the State's request to recall A.E. so she could provide details about the disorderly conduct charge.

**{¶22}** Mr. Smalley claims the trial court deprived him of his right to present a complete defense when it restricted his ability to question A.E. and the future husband about the end of their marriage. He argues that further questioning would have allowed him to undercut A.E.'s credibility and show she had a habit of making false accusations. According to Mr. Smalley, the restrictions the trial court placed on his inquiries deprived him of a fair trial.

**{¶23}** Even assuming the trial court improperly limited Mr. Smalley's cross-examination, the record supports the conclusion that the error was harmless beyond a reasonable doubt. *See State v. Dugan*, 1990 WL 188403, *1 (9th Dist. Nov. 21, 1990), citing *Chapman v. California*, 386 U.S. 18, 24 (1967). First, the trial court permitted Mr. Smalley to ask both A.E. and the future husband about the reason for the end of their marriage. A.E. testified that it ended because the future husband hit her. The future husband denied that accusation three separate times. Mr. Smalley was able to use the future husband's denial to attack A.E.'s credibility when arguing to the jury. Thus, the trial court's ruling did not deprive him of the ability to make that argument.

**{¶24}** Second, the record shows there was overwhelming proof of Mr. Smalley's guilt such that there is no reasonable possibility the limitation on his cross-examination impacted the jury's verdict. *See State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus; *State*

*v. Stefanko*, 2022-Ohio-2569, ¶ 31 (9th Dist.). Mr. Smalley's charge required the State to prove that he engaged in sexual conduct with A.E. when he knew her ability to appraise the nature of or control of her conduct was substantially impaired. *See* R.C. 2907.03(A)(2). The jury heard a wealth of testimony that A.E. was substantially impaired. Multiple witnesses saw her fall into a trash can at the bar and observed that she was unable to walk. There was testimony that Mr. Smalley had to carry her from the bar area "like a baby." The jury also heard testimony that, when the future husband came to get A.E. at Mr. Smalley's house, she still could not walk on her own and appeared to be disoriented and heavily under the influence. Regardless of what may later have happened to end their marriage, the future husband gave evidence to support the conclusion that A.E. was substantially impaired when Mr. Smalley had sexual intercourse with her. Because the record shows that any error the trial court committed in restricting aspects of Mr. Smalley's cross-examination was harmless beyond a reasonable doubt, we reject Mr. Smalley's argument that he was denied a fair trial. His first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT'S IMPOSITION OF THE PRISON SANCTION WAS CLEARLY AND CONVINCINGLY UNSUPPORTED BY THE RECORD[.]**

**{¶25}** In his second assignment of error, Mr. Smalley argues the trial court did not properly consider and apply R.C. 2929.11 and 2929.12 when it sentenced him to an excessive term of four years in prison. We reject his argument.

**{¶26}** "R.C. 2953.08(G) defines the standard of review for felony-sentencing appeals." *State v. Jones*, 2020-Ohio-6729, ¶ 27. Under that statute, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1, citing R.C. 2953.08(G)(2). R.C. 2953.08

"does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones* at ¶ 39. Accordingly, this Court may not review an appellant's argument that (1) the record does not support the imposition of a prison sanction, or (2) the trial court failed to properly consider the factors set forth in R.C. 2929.11 and 2929.12. *See State v. Howze*, 2024-Ohio-2701, ¶ 11 (9th Dist.); *State v. Blackburn*, 2024-Ohio-1524, ¶ 19 (9th Dist.).

**{¶27}** Mr. Smalley argues the record does not support a prison term of four years and the trial court failed to properly consider R.C. 2929.11 and 2929.12 in imposing that sentence. "Under *Jones*, this Court cannot undertake a review of this kind." *Howze* at ¶ 11. Accordingly, his second assignment of error is overruled.

III.

**{¶28}** Mr. Smalley's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JOHN KOPASAKIS, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.