[Cite as *State v. Janosky*, 2026-Ohio-158.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-03-008 |
| vs. | : | <u>OPINION AND</u><br><u>JUDGMENT ENTRY</u><br>1/20/2026 |
| LOREN C. JANOSKY, | : | |
| Appellant. | : | |
| | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20240081


Nicholas A. Adkins, Madison County Prosecuting Attorney, and Michael S. Klamo, Chief Assistant Prosecuting Attorney, for appellee.

Shannon M. Treynor, for appellant.


## **O P I N I O N**


**HENDRICKSON, P.J.**

{¶ 1} Appellant, Loren C. Janosky, appeals from the sentence he received in the

Madison County Court of Common Pleas following his guilty plea to failure to comply with

the order or signal of a police officer. For the reasons discussed below, we affirm his sentence.

{¶ 2} On July 19, 2024, the London Police Department was advised that appellant had an outstanding warrant for his arrest out of the State of Tennessee. Officers located appellant driving a vehicle through London, Ohio, and attempted a traffic stop of the vehicle, employing the police cruiser's lights and sirens. Appellant refused to stop and led the police on a chase lasting over 10 minutes and covering more than 9 miles. Appellant led officers out of the city limits and into the country, traveling at speeds of 55 to 60 m.p.h. in areas where there were 90-degree turns and an inability to see whether any oncoming traffic was approaching. Appellant ran through multiple stop signs, overtook at least two vehicles, and traveled onto a bridge where people were fishing at Madison Lake, causing the fishermen to take evasive action in order to avoid being struck. Officers eventually deployed stop sticks. In an effort to avoid the stop sticks, appellant swerved his vehicle towards an officer, coming within four or five feet of the officer. Appellant eventually drove his vehicle into a soybean farm before exiting the vehicle and fleeing on foot. Inside the vehicle, officers found a passenger (appellant's girlfriend), a firearm, and two sets of fictitious plates—one that was on the vehicle already, and another in the trunk of the vehicle. Officers searched for appellant but were unable to locate him for four days. He was arrested on July 23, 2024, near Madison Lake.

{¶ 3} Appellant was indicted on August 9, 2024 on one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), a felony of the third degree. The indictment alleged that appellant's operation of a motor vehicle and his failure to stop the vehicle caused a substantial risk of serious physical harm to persons or property. Appellant initially pled not guilty to the charge. However, on the morning a jury trial was set to commence, appellant pled guilty as charged. Following a Crim.R.

11(C) plea colloquy, the trial court accepted appellant's guilty plea and found him guilty. The court ordered a presentence-investigative report (PSI) and scheduled sentencing for February 14, 2025.

{¶ 4} At the sentencing hearing, the trial court heard from defense counsel, appellant, and an assistant prosecutor. Defense counsel indicated appellant suffered from mental health issues and had been diagnosed with PTSD, depression, and schizophrenia. When the failure to comply offense occurred in July 2024, appellant was not taking his medication, which counsel indicated not only affected appellant's behavior but also affected his memory from that day. Nonetheless, counsel noted, appellant took responsibility for his actions when he pled guilty to the offense. Appellant spoke to the court about needing help and treatment, stating, "I know I need help. And putting me in prison is not going to get me the help that I need." Appellant admitted he chose to stop taking prescribed mental-health medications because he did not like how the medications made him feel and he wanted to be "normal." Appellant claimed he could not recall the specifics of his behavior on July 19, 2024.

{¶ 5} The prosecutor argued that a prison sentence of 30 or 36 months was warranted given the seriousness of appellant's conduct and his risk of recidivism. The prosecutor noted that appellant's actions in refusing to stop his vehicle and leading the officers on a more than 8-mile chase threatened substantial risk of serious physical harm to persons and property, namely other motorists appellant encountered on the road, the people fishing on the bridge who had to take evasive action to avoid being hit, and the officer that appellant nearly hit when swerving to avoid the stop sticks. Appellant had also destroyed approximately $1,000 worth of crops when he drove into the soybean field. The prosecutor further indicated that appellant had committed a number of burglaries after he fled from the soybean field, stealing food, water, and clothing while evading arrest.

{¶ 6} The prosecutor noted that at the time appellant committed this offense, he was on community supervision or parole for felonies committed in Tennessee, namely aggravated rape and especially aggravated kidnapping.[1] Appellant had violated his parole a number of times, including by failing to appear for a supervision violation hearing and by removing a tracking device or ankle monitor. In October 2023, a search of appellant's residence revealed that he was in possession of a firearm and ammunition, also a violation of the terms of his parole.

{¶ 7} The trial court indicated it had reviewed the PSI and was familiar with the facts that comprised the failure to comply offense and was familiar with appellant's criminal history and history of parole violations. The court noted that in 1998, appellant had been convicted in Tennessee of carrying concealed weapons and placed on probation. Then, in 2002, he was convicted of two counts of aggravated rape and one count of especially aggravated kidnapping in Tennessee. Appellant was sentenced to an 18-year prison sentence. Upon his release in November 2017, appellant was placed on lifetime community supervision or parole. Appellant successfully had his supervision transferred to the State of Ohio, where the court commented supervision was "unremarkable" for some time. However, on a home visit, the Ohio Adult Parole Authority ("Ohio APA") found firearms inside appellant's home, which appellant was prohibited from possessing. The Ohio APA indicated it would "no longer supervise Mr. Janosky" and appellant's supervision was transferred back to Tennessee. In August 2018, appellant committed four violations of his community supervision and was sentenced to an 11-month and 29-day jail sentence. The trial court further noted that though there was a no-contact order prohibiting appellant from having contact with the victim of his rape offense,

---

1. "Especially aggravated kidnapping" is a crime under Tennessee Code § 39-13-305.

- 4 -

the PSI indicated "contacts have indeed occurred over a period of time, and it's rather evident that the victim has expressed concerns." Finally, the court noted that appellant had tampered with an ankle monitor that he was required to wear which "appear[ed] to be what triggered the warrants that ultimately caused London PD to have its encounter with [appellant]."

{¶ 8} The court then spoke about other "alarming concerns" that had been discovered since the failure to comply offense. The court noted that the appellant's girlfriend had been found in the vehicle that appellant abandoned in the soybean field, and that appellant's girlfriend had gained admission to the Peace Officer Training Academy, "apparently with some fraudulent documents that were ultimately discovered, resulting in a security alert being sent out regarding her as well as [appellant]." When a search warrant was executed, numerous firearms were located in the residence, as were items that would identify the wearer of the items as a law enforcement officer. The trial court noted, "[t]hat has particularly troubling implications because of the fact pattern related to [appellant's] rape charges which involve him utilizing his position as a security officer to initiate a traffic stop where he ultimately asserts authority that he simply didn't have and ultimately utilizes that authority to commit rape."

{¶ 9} After hearing from defense counsel, appellant, and the prosecutor, reviewing the PSI, and considering relevant sentencing statutes, the trial court found appellant was not amenable to community control sanctions. The court found that "the offense is more serious than that normally constituting the offense" and that "[t]he recidivism factors indicate a high risk of recidivism." The court imposed a 36-month prison sentence and advised appellant he would be subject to a mandatory one-to-three-year period of postrelease control upon his release from prison.

{¶ 10} Appellant appealed his sentence, raising the following as his sole

assignment of error:

{¶ 11} THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A MAXIMUM SENTENCE.

{¶ 12} Appellant maintains that the trial court erred when it sentenced him to 36 months in prison on his failure to comply conviction. He argues that the trial court "improperly considered factors outside the statutory parameters when imposing [his] sentence," thereby rendering a sentence that is contrary to law.

{¶ 13} As an initial matter, we note that contrary to the caption of appellant's assignment of error, an appellate court "does not review the sentencing court's decision for an abuse of discretion." *State v. Scott*, 2020-Ohio-3230, ¶ 54 (12th Dist.), citing *State v. Marcum*, 2016-Ohio-1002, ¶ 10. Rather, a felony sentence is reviewed under the standard set forth in R.C. 2953.08(G)(2). *Marcum* at ¶ 1. Pursuant to R.C. 2953.08(G)(2), an appellate court can modify or vacate a sentence only if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

As used in R.C. 2953.08(G)(2)(b), the phrase "otherwise contrary to law" means "'in violation of statute or legal regulations at a given time.'" *State v. Jones*, 2020-Ohio-6729, ¶ 34, quoting *Black's Law Dictionary* (6th Ed. 1990). *See also State v. Bryant*, 2022-Ohio-1878, ¶ 22. "A sentence is not clearly and convincingly contrary to law where [a] trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.'" *State v. Haruyama*, 2022-Ohio-4225, ¶ 8 (12th Dist.),

quoting *State v. Ahlers*, 2016-Ohio-2890, ¶ 8 (12th Dist.).

{¶ 14} "R.C. 2953.08(G)(2) does *not* permit an appellate court to conduct an independent review of a trial court's sentencing findings under R.C. 2929.12 or its adherence to the purposes of felony sentencing under R.C. 2929.11." (Emphasis added.) *Bryant* at ¶ 21, citing *Jones* at ¶ 41-42. Nothing within the statute permits an appellate court to "independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones* at ¶ 42. *See also State v. Lopez-Cruz*, 2023-Ohio-257, ¶ 7 (12th Dist.). However, an appellate court is not prohibited from reviewing a sentence "when the claim is that the sentence was imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12." *Bryant* at ¶ 22.

{¶ 15} Following our review of the record, we find that appellant's sentence is not contrary to law. The imposition of a 36-month prison term falls within the permissible statutory range for a third-degree felony offense; see R.C. 2929.14(A)(3); and a one-to-three-year mandatory term of postrelease control was properly imposed for the offense. *See* R.C. 2937.28(B)(4). Though the trial court did not specifically cite to R.C. 2929.11 or 2929.12 at the sentencing hearing, it is not required to do so. *See State v. Motz*, 2020-Ohio-4356, ¶ 43 (12th Dist.). "The fact that R.C. 2929.11 and 2929.12 are not expressly referenced during a sentencing hearing is immaterial when the court's sentencing entry cites to both statutes." *State v. Luttrell*, 2022-Ohio-1148, ¶ 25 (12th Dist.), citing *State v. Murphy*, 2021-Ohio-4541, ¶ 27 (12th Dist.). Here, the trial court stated in its entry, that

> [a]fter reviewing the seriousness of the offense, recidivism factors as set forth in Revised Code §2929.12, and weighing those factors against the purposes and principles of sentencing as set forth in §2929.11 of the Revised Code, the Court finds the Defendant is not amenable to Community

Control Sanctions and a prison term is commensurate with and not demeaning to the seriousness of the Defendant's conduct and is consistent with sentences imposed for similar crimes committed by similar offenders.

Furthermore, the record from the sentencing hearing indicates the court considered all "relevant factors," when imposing appellant's sentence, including that "the offense is more serious than that normally constituting the offense" and the "recidivism factors indicate a high risk of recidivism."

{¶ 16} The record further demonstrates that in addition to considering the factors set forth in R.C. 2929.11 and 2929.12, the court also considered the factors set forth in R.C. 2921.331(C)(5)(b). This provision provides that where a defendant is convicted of third-degree failure to comply under section (B) of R.C. 2951.331 where the operation of the motor vehicle either proximately caused serious physical harm to persons or property or caused a substantial risk of serious physical harm to persons or property, the sentencing court

> shall consider, along with the factors set forth in R.C. 2929.12 and 2929.13 of the Revised Code . . . all of the following:
>
> The duration of the pursuit;
>
> (ii) The distance of the pursuit;
>
> (iii) The rate of speed at which the offender operated the motor vehicle during the pursuit;
>
> (iv) Whether the offender failed to stop for traffic lights or stop signs during the pursuit;
>
> (v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;
>
> (vi) Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required;
>
> (vii) Whether the offender committed a moving violation during the pursuit;

(viii) The number of moving violations the offender committed during the pursuit;

(ix) Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense.

R.C. 2921.331(C)(5)(b). Here, the court detailed the length of the pursuit (9.2 miles), the duration of the pursuit (11 minutes), appellant's rate of speed (between 50 and 60 m.p.h.), appellant's failure to stop at two stop signs and his commission of other moving violations, as well as other factors the court found serious and concerning. Such factors included appellant coming within four-to-five feet of striking an officer when trying to avoid stop sticks, appellant causing individuals fishing and playing near Madison Lake to take evasive action, and appellant driving into a soybean field before fleeing on foot and evading capture for four days. We find such factors relevant when considering the seriousness of appellant's conduct and crime.

{¶ 17} Appellant argues that the trial court considered factors beyond those permitted by R.C. 2929.11, 2929.12, and 2921.331(C)(5)(b) in imposing his sentence. Specifically, appellant argues the trial court impermissibly considered the following factors:

(1) The Ohio APA would no longer supervise appellant as requested because it found weapons in his home;

(2) That appellant was suspected of having contact with a victim out of a Tennessee case in violation of a "no contact" order;

(3) That appellant's girlfriend had gained admission to the Ohio Peace Officers Training Academy with purportedly fraudulent documents;

(4) That during a search of the appellant's and his girlfriend's home, some articles of police officer uniform/regalia were discovered, again only relating to a case out of Tennessee; and

- 9 -

(5) That appellant claimed his Second Amendment rights to the probation staff during his PSI.

{¶ 18} We find no merit to appellant's arguments. The aforementioned facts that appellant argues were "impermissible" considerations are facts relevant to his risk of recidivism and the need for the court to fashion a sentence that protects the public from future crime by the offender. See R.C. 2929.12 and 2929.11. Many of the facts appellant complains the trial court should not have considered were relevant considerations of appellant's past failures to abide by court orders and parole conditions.[2] For instance, the court noted that appellant had contact with his rape victim despite a no contact order and he possessed firearms in his home in violation of the terms of his parole and supervision, thereby causing the Ohio APA to transfer parole supervision back to Tennessee. The court's reference to "Ohio [APA] saying we could no longer supervise Mr. Janosky" was in reference to his parole supervision being transferred back to Tennessee. It was not considered by the court as a prohibition on the court's ability to impose a community control sanction. Appellant's "second amendment style statements" were considered by the court in combination with appellant's possession of prohibited firearms, with the court noting it was troubling that the statements "seem to evince a suggestion that he's not subject to limitations when it comes to firearms." We find that the trial court was entitled to consider appellant's statements and conduct in assessing his risk of recidivism and the need to protect the public from future crime by the offender. Appellant's sentence was not

---

2. One of the statements appellant claims was improper related to the conduct of appellant's girlfriend. The court noted, "[t]he female in the vehicle that was stopped identified herself as Mr. Janosky's girlfriend; *and while this has nothing to do directly with Mr. Janosky*, she apparently had gained admission to the Peace Officer Training Academy, apparently with some fraudulent documents that were ultimately discovered, resulting in a security alert being sent out regarding her as well as Mr. Janosky. A search warrant was conducted for the[ir] residence shortly after the pursuit." (Emphasis added.) There is no indication the trial court held appellant's girlfriend's conduct against him when imposing a sentence. Rather, the court indicated the girlfriend's conduct "ha[d] nothing to do" with appellant. The court appeared to mention appellant's girlfriend's conduct only to shed light on how a security alert was issued for appellant and his girlfriend.

based on impermissible considerations and was not clearly and convincingly contrary to law. We therefore overrule appellant's sole assignment of error.

{¶ 19} Judgment affirmed.

BYRNE and SIEBERT, JJ., concur.

## JUDGMENT ENTRY

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Madison County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Matthew R. Byrne, Judge

/s/ Melena S. Siebert, Judge